POLLY BRISTER *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW.     *Gambling.     Permitting gambling in house.     Code* 1892, § 1126.

An indictment, under Code 1892, § 1126, making it a misdemeanor for the owner, lessee, or occupant of any house to permit gambling therein, charging that the accused, unlawfully, knowingly, and feloniously, suffered games of chance to be played with dice for money in a house occupied by her as a dwelling, contrary to the statute, etc., is not demurrable, and it is not vitiated by the improper use of the word "feloniously."

2. MISCONDUCT OF JURORS.     *Reading statutes.*

An examination by the jury during their deliberations in a criminal case of the statutes of the state touching the crime charged in the indictment, found in the jury room, is not ground for a new trial, in the absence of a showing that' defendant was thereby prejudiced.

3. SAME.     *Evidence.     Juror as witness.*

The testimony of a juror that reference was made during their deliberations to statutes found in the jury room is incompetent to impeach the verdict.

FROM the circuit court of Pike county.

HON. MOYSE H. WILKINSON, Judge.

Polly Brister, the appellant, was indicted, tried, and convicted of violating Code 1892, § 1126, permitting gambling in her dwelling house, and appealed to the supreme court.

The indictment, omitting formal parts, was as follows: "Polly Brister, in said county, on the 25th day of August, 1902, being then and there the lessee and occupant of a certain dwelling house located in the town of Summit, Mississippi, and occupied by her as a dwelling, did then and there, unlawfully, knowingly, and feloniously, permit and suffer games of chance to be played and carried on with dice for money, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Mis-

sissippi." Defendant's demurrer to this indictment was over-
ruled. A motion for a new trial was made by defendant, and
on the hearing a juror who had tried the case was introduced,
who testified that the annotated code of Mississippi, 1892, and
the amendments thereto, were found by the jury on a table in
the room, and one of the jurors got these statutes and read them
to his associates, expounded the law as there written and argued
the case to them, and that a verdict of guilty would not have
been reached had he not done so. The motion was overruled.

*L. H. McGehee,* for appellant.

The demurrer to the indictment was good and should have
been sustained. It is very evident that the indictment charges
a felony, when the crime attempted to be charged is a mis-
demeanor.

The reading of law books to a jury after instructions have
been asked and given by the court is expressly prohibited. *Uni-
ted States* v. *Watkins* (Fed. Case No. 16649), 3 Cranch, 441;
*Yarborough* v. *State,* 105 Ala., 43 (s.c., 16 South. Rep., 718);
*State* v. *Fitzgerald,* 130 Mo., 407 (s.c., 32 S. W. Rep., 1113).

It is *prima facie* fatal for the jury to secure and read law
books with reference to the particular crime under investiga-
tion after instructions have been given them by the court and
after they have retired for deliberation.

The jury should always, during the consideration of a case,
be kept free from any outward or improper influence. *Tark-
ington* v. *State,* 72 Miss., 731; *Cartwright* v. *State,* 71 Miss.,
82; *Johnson* v. *State,* 27 Fla., 245; *Newkirk* v. *State,* 27 Ind.,
196.

*William Williams,* attorney-general, for appellee.

Counsel complains because the jury had the code and the
acts of the legislature in their possession while they were con-
sidering the verdict. Counsel did not read law books to the
jury. It is admitted that the jury should not have had books

in their possession, but neither the court nor counsel is to blame for books having been left in the jury room. The fact that the jury did have and read the code and the acts of the legislature is not a sufficient ground to warrant a reversal of this case.

Cox, J., delivered the opinion of the court.

The action of the court in overruling the demurrer to the indictment was correct. The use of the adverb "feloniously" in charging a misdemeanor does not vitiate the indictment. It does not prejudice the accused, and will be treated as mere surplusage. The indictment charges with sufficient fullness and precision the statutory offense of permitting games of chance for money to be carried on in one's dwelling house. It informed the accused of the nature and cause of the accusation, and so identified the offense as to insure accused against a subsequent prosecution therefor.

There was no error in the action of the court in overruling the motion for a new trial. The fact that the jury had obtained and consulted law books bearing on the case is not a ground for disturbing the verdict, if it does not appear that any prejudice resulted from the irregularity. 12 Ency. Pl. & Pr., 601.

But even if this were not the law, the verdict must be sustained against the assault upon it on another and higher ground. The only evidence in impeachment of the verdict was the testimony of one of the jurors. It is not competent thus to impeach a verdict. "Such evidence is forbidden by public policy, since it would disclose the secrets of the jury room, and afford opportunity for fraud and perjury. It would open such a door for tampering with weak and indiscreet men that it would render all verdicts insecure; and, therefore, the law has wisely guarded against all such testimony, and has considered it as unworthy of notice. It would be a most pernicious practice, and in its consequences dangerous to this much-valued mode

of trial, to permit a verdict, openly and solemnly declared in court, to be subverted by going behind it and inquiring into the secrets of the jury room." 14 Ency. Pl. & Pr., 906–909. The testimony should not have been heard. Having been heard, it should have been disregarded, as doubtless it was.

*Affirmed.*