399 So.2d 825 (1981)
John ANNARATONE
v.
STATE of Mississippi.
No. 52665.
Supreme Court of Mississippi.
June 10, 1981.
Richard T. Phillips, Smith & Phillips, Batesville, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, SUGG and BOWLING, JJ.
SUGG, Justice, for the Court:
Appellant was convicted in the Circuit Court of Tate County on two counts of rape and sentenced to serve two fifteen-year terms consecutively. On appellant's motion,[1] these two cases were consolidated for trial.
Appellant does not deny the acts were committed, but only that he lacked the mental capacity for guilt. The sole issue for the jury was whether the appellant was able to distinguish right from wrong at the time the rapes were committed. The facts of both crimes are uncontradicted.
On November 1, 1978, the appellant John R. Annaratone, drove to Tate County and approached Victim # 1 on the pretense of being a prospective buyer of her home stating the realtor had sent him to look at the house. Victim # 1 showed appellant *826 throughout her house and then offered him a glass of iced tea. At that time he pulled a knife, ordered her to the bedroom and raped her. He tied and blindfolded her with nylon stockings, tore the phones from the wall and left. Victim # 1 testified that she heard the appellant empty the ice from the glass into the sink. However, the glass he used was never recovered.
On November 15, 1978, appellant drove to the home of Victim # 2. At the front door he inquired about some real estate, asked her where the Ferrow place was and if she might find the phone number for him or allow him to use the telephone. He followed his victim into the mobile home and locked the door. When she turned around, he confronted her with the knife, ordered her to the bedroom and raped her. At the beginning of the sex act, Victim # 2 told appellant she might get pregnant. Before ejaculating, appellant withdrew from her. He then put on his clothes, pulled the phone out of the wall and left. He backed his truck out to the road to conceal his license tag number.
Appellant was arrested March 23, 1979, and confessed to both crimes. Officers from the Tate County Sheriff's Department and the Mississippi Highway Patrol testified that appellant admitted he attempted to conceal his license tag number by backing out of Victim # 2's driveway and that he expressed remorse for his actions and concern for both victims.
The defense presented two psychiatrists who concluded appellant suffered from a psychotic depressive reaction and was therefore unable to distinguish right from wrong at the time of the crimes. The 23 lay witnesses who testified for the defense primarily attested to the appellant's good moral character and exemplary lifestyle before the rapes occurred. The state presented no expert medical testimony on the issue of appellant's sanity. From this conflicting evidence the jury found appellant was sane when he committed both rapes. In his first assignment of error appellant contends the state's evidence was not sufficient to refute the experts' opinions. We disagree.
The Federal and State Constitutions guarantee an accused the right of a trial by jury, not a trial by medical experts. If a jury is not free to reach a verdict contrary to the opinion of medical experts which is contradicted by lay testimony, this would, in effect, substitute a trial by jury to a trial by medical experts. This Court has repeatedly held that, regardless of expert testimony presented by the defense, it is the jury who makes the final determination on the issue of a defendant's sanity. King v. State, 374 So.2d 808 (Miss. 1979); Lias v. State, 362 So.2d 198 (Miss. 1978); Knight v. State, 360 So.2d 674 (Miss. 1978); Hollins v. State, 340 So.2d 438 (Miss. 1976).
In Lias, supra, the defense was predicated on the opinion of a psychiatrist who testified the defendant was unable to distinguish right from wrong at the time of the crimes. Affirming the jury verdict of guilty, we said:
While admitting the closeness of the factual determination, we also acknowledge that such determination is the purpose for which juries exist. We are unwilling on an appeal to overturn a jury determination unless such determination is unsupported by the facts. (362 So.2d at 201)
Appellant's ability to distinguish right from wrong when he committed the rapes was supported by the state's evidence; therefore, we are not willing to overturn the jury determination of sanity. Further, the jury's verdict was not against the overwhelming weight of the evidence.
During deliberations the jury sent a note to the judge asking: "(1) With the top two instructions [verdicts] will the defendant get medical attention, and (2) on the third verdict [not guilty by reason of insanity] who decides how long he is committed?" Appellant does not object to the judge's response to the jury but contends he was denied a fair trial because the jury improperly considered appellant's subsequent disposition rather than his sanity or insanity. Appellant argues this inquiry by the jury indicates that the jury had a reasonable *827 doubt as to his ability to distinguish right from wrong at the time he committed the crimes with which he was charged. To the contrary, the inquiry from the jurors demonstrates they were considering the instruction of the court before reaching a verdict.
Appellant's final contention is that he was denied a fair trial because the jurors read from law books stored in the jury room. At a hearing subsequent to the trial members of the jury testified that some jurors read from one of the books stored in the jury room about an automobile accident case involving a resident of the county and from another book some history of the courthouse. The trial judge denied appellant's motion for new trial relying on Brister v. State, 86 Miss. 461, 38 So. 678 (1905) which held:
There was no error in the action of the court in overruling the motion for a new trial. The fact that the jury had obtained and consulted law books bearing on the case is not a ground for disturbing the verdict, if it does not appear that any prejudice resulted from the irregularity. 12 Ency. Pl. & Pr., 601.
But even if this were not the law, the verdict must be sustained against the assault upon it on another and higher ground. The only evidence in impeachment of the verdict was the testimony of one of the jurors. It is not competent thus to impeach a verdict. "Such evidence is forbidden by public policy, since it would disclose the secrets of the jury room, and afford opportunity for fraud and perjury. It would open such a door for tampering with weak and indiscreet men that it would render all verdicts insecure; and, therefore, the law has wisely guarded against all such testimony, and has considered it as unworthy of notice. It would be a most pernicious practice, and in its consequences dangerous to this much-valued mode of trial, to permit a verdict, openly and solemnly declared in court, to be subverted by going behind it and inquiring into the secrets of the jury room." 14 Ency. Pl. & Pr., 906-909. The testimony should not have been heard. Having been heard, it should have been disregarded, as doubtless it was. (86 Miss. at 463, 464; 38 So. at 678, 679).
We agree with the trial judge's ruling. It does not appear that reading about an automobile accident case and some history of the courthouse influenced the verdict of the jury to the prejudice of appellant.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] The court denied appellant's request to consolidate an aggravated assault charge in DeSoto County and another rape charge in Marshall County.