## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-KA-00850-SCT

*ANTHONY W. COLLINS*

*v.*

*STATE OF MISSISSIPPI*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/94 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | JEANNENE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/16/97 |
| MOTION FOR REHEARING FILED: | 5/12/97 |
| MANDATE ISSUED: | 10/23/97 |

**EN BANC.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

¶1. The Motion for Rehearing is granted. The original opinions are withdrawn and these opinions are substituted therefor.

### STATEMENT OF THE CASE

¶2. Anthony W. Collins ("Collins") was indicted, tried and convicted in the Circuit Court of the Second Judicial District of Jones County for the murder of Jerry West ("West"). On January 1, 1994, West was shot by Collins under disputed circumstances. West died three days later as a result of a single shot from a handgun.

¶3. On August 18, 1994, trial commenced in the Circuit Court of the Second Judicial District of Jones County. Collins' defense was that the shooting was provoked and that he was defending himself. After two days of testimony, the jury returned the verdict, finding Collins guilty of murder.

The trial court sentenced Collins to life imprisonment.

¶4. Collins filed a motion for a judgment notwithstanding the verdict, or, in the alternative, motion for a new trial. On September 23, 1994, the motion was denied and final judgment entered. Aggrieved by the disposition below, Collins assigns the following as error:

**I. WHETHER THE TRIAL COURT ERRED BY NOT DISMISSING THE INDICTMENT ON THE GROUNDS THE POLICE NEGLIGENTLY LOST A PIECE OF EXCULPATORY EVIDENCE, NAMELY THE CAR?**

**II. WHETHER THE TRIAL COURT ERRED IN NOT EXCUSING FOR CAUSE A FORMER POLICE OFFICER WHO HAD NUMEROUS LINKS TO THE PROSECUTION?**

**III. WHETHER THE TRIAL COURT ERRED IN REFUSING DEFENDANT'S MOTION TO USE PRIOR STATEMENTS OF THE PROSECUTING ATTORNEY AS SUBSTANTIVE EVIDENCE?**

**IV. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A VERDICT OF GUILTY OF MURDER OR IN THE ALTERNATIVE WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW OF MISSISSIPPI?**

**V. WHETHER THE TRIAL COURT ERRED IN REFUSING DEFENSE INSTRUCTION D-7 OTHERWISE KNOWN AS THE STANDING GROUND INSTRUCTION?**

**VI. WHETHER THE TRIAL COURT ERRED IN REFUSING DEFENSE INSTRUCTION D-7, A DEFINITION OF PREMEDITATION AND DELIBERATE DESIGN?**

**VII. WHETHER THE TRIAL COURT ERRED IN REFUSING DEFENSE INSTRUCTION D-13 ON ACCIDENT AND MISFORTUNE TO THE EXTREME PREJUDICE OF THE DEFENDANT?**

**VIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE JURY'S USE OF *BLACKS'S* (sic) *LAW DICTIONARY* DURING DELIBERATIONS?**

**IX. WHETHER CUMULATIVE ERROR REQUIRES REVERSAL OF THE VERDICT?**

¶5. After a careful review of the briefs and record in this matter, we find that the trial judge erred when he sent, without proper safeguards or limitations, the entire *Black's Law Dictionary* to the jury room in response to the jury's request for a legal definition. Regrettably, we reverse the conviction of Anthony Collins and remand this cause for a new trial.

**STATEMENT OF THE FACTS**

¶6. On New Year's Eve 1993, Anthony Collins and his brother, Kenny Holland ("Holland"), went to the Oyster Bar in Laurel, Mississippi, to celebrate the new year. The evening was uneventful until round 2:00 a.m., when Collins went outside to his car and noticed someone having car trouble. He offered help and attempted to jump-start the car. At some point later, Holland came outside and, for reasons not explained, Holland and West, whose blood alcohol level was later determined to be 0.22, argued while standing in front of the night spot. West hit and knocked Holland to the ground. West and his companion, Ginger Myers ("Myers"), attempted to take the unconscious Holland and place him in West's automobile, a Ford Escort. One of the witnesses, Tracy Hill ("Hill"), stated that Myers had said West only hit Holland after Holland drew a gun on the unarmed West. Hill indicated that Myers had picked up Holland's gun. Upon seeing Holland being placed in West's car, Hill searched for Collins so that Collins could take his brother, Holland, home. Also, Hill disclosed that she told Collins that West had Holland's gun. Collins then walked to his own car, got a handgun, and placed the gun in the back of his trousers. Collins and Hill then walked to West's automobile and took Holland from the car. Collins then walked Holland back to Collins' car. Collins then saw West and Myers begin to drive away, out of the Oyster Bar's parking lot, and ran in front of the car, causing West to stop. Loose gravel on the parking lot allowed the car to slide almost into Collins. Collins yelled, cursed, and threatened West and dared him to get out of the car. According to testimony, West twice revved his car's engine and lurched the car forward, each time forcing Collins to retreat a few feet. The third time West revved the car's engine, Collins, at some point having pulled his gun, shot into the windshield, the bullet striking West in the forehead. The manual transmission automobile then proceeded through the parking lot and across the highway and struck a concrete barrier. West died three days later at a hospital in Hattiesburg, Mississippi.

¶7. On August 16, 1994, jury selection was made and the trial began. After testimony and closing arguments, the jury began its deliberation at approximately 2:50 p.m. At approximately 3:55 p.m., the jury asked for the definition of premeditation. The judge stated he believed the jury was entitled to know the definition of premeditation. Defense counsel objected. The judge then sent the jury a copy of *Black's Law Dictionary*, 5th Edition, marked at page 1062. No instructions, limiting or otherwise, or directions were given by the judge to the jury. At approximately 4:04 p.m. the jury announced it had reached a verdict. Collins was found guilty of murder. The judge then sentenced Collins to life imprisonment.

## DISCUSSION OF THE LAW

¶8. As Issue VIII is dispositive in the instant case, and warrants this Court's reversal of Collins' conviction, we limit our discussion to this issue.

> **VIII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE JURY'S USE OF *BLACKS'S* (sic) *LAW DICTIONARY* DURING DELIBERATIONS?**

¶9. In the case *sub judice*, the trial judge denied both the prosecution and the defense their respective jury instructions as to the definition of "premeditation." The jury deliberated for an hour and five minutes, then requested the definition of "premeditation." The judge, believing that the jury was entitled to know the definition of "premeditation," sent the jury the entire *Black's Law Dictionary*, marking page 1062. No instructions, limiting or otherwise, were given to guide the jury (the colloquy

regarding the sending of the law dictionary to the jury is quoted in its entirety, *infra*). The following definitions were included on that page:

> Premeditate. To think of an act beforehand; to contrive and design; to plot or lay plans for the execution of a purpose. See Deliberate; Premeditation.

> Premeditated design. In homicide cases, the mental purpose, the formed intent, to take human life. Premeditated murder is murder in the first degree.

> Premeditatedly. Thought of beforehand, for any length of time, however short.

> Premeditation. The act of meditating in advance; deliberation upon a contemplated act; plotting or contriving; a design formed to do something before it is done. Decision or plan to commit a crime, such as murder, before committing it. A prior determination to do an act, but such determination need not exist for any particular period before it is carried into effect. Term "premeditation," means "thought of beforehand for any length of time, however short." State v. Marston, Mo., 479 S.W.2d 481, 484. See also *Malice aforethought; Willful.*

(Emphasis added). Nine minutes later the jury announced it had reached a verdict, finding Collins guilty of murder.

¶10. Collins contends that the law dictionary was an extraneous influence injected into deliberations by the judge and that the jury's verdict should be invalidated unless the effect can be shown to be harmless. Collins argues that the probability exists that the jury consulted other definitions, notably that of "malice aforethought," which are inconsistent with the law of our state. The essence of the State's argument is that, if the judge's sending of *Black's Law Dictionary* to the jury room was improper, such is harmless error because Collins did not demonstrate that the jury looked at definitions other than that for "premeditation" and, therefore, was not prejudiced by the jury's use of the law dictionary. The State also contends that this issue is procedurally barred because Collins did not object with specificity.

¶11. In our system of justice, every person charged with a crime is entitled to receive a fair trial before an impartial jury of his peers. Miss. Const. art. 3, § 26; U. S. Constitution amend. VI. A jury is to consider only the evidence developed at trial in determining its verdict. *Fuselier v. State*, 468 So. 2d 45, 57 (Miss. 1985) ("[A] jury's verdict must be based upon the evidence and not affected by extraneous influences."). A law book sent to the jury room, without proper precautions taken to ensure that the jury did not read from any inappropriate portions which would conflict with Mississippi law, is an extraneous influence upon a jury. As explained by a case on point in our sister state of Louisiana, "[t]he written word of a legal volume is more of an intrusion than a verbal communication because of its imprimatur of authority." *State v. Sinegal*, 393 So. 2d 684, 686 (La. 1981).

¶12. Two cases in Mississippi law address extraneous influences regarding the use of law books by the jury in its deliberations. In *Annaratone v. State*, 399 So. 2d 825 (Miss. 1981), a rape case, the jury discovered law books stored in the jury room. *Id.* at 827. At a hearing following the trial, members of the jury testified that some of the jurors read from one of the books about an automobile accident and from another book regarding the history of the county. Relying upon *Brister v. State*, 86

Miss. 461, 38 So. 678 (1905), the other Mississippi case dealing with the use of law books in the jury's deliberations, the judge denied the appellant/defendant's motion for a new trial. *Annaratone*, 399 So. 2d at 827.

¶13. In *Brister*, Polly Brister was tried and convicted of permitting gambling in her home. *Brister*, 86 Miss. at 461, 38 So. at 678. A motion for a new trial was made by Brister because one of the jurors found, in the jury room, a copy of the annotated Code of Mississippi, 1892, and proceeded to read the applicable statutes to his associates and argued the case to them. *Id.* at 462, 38 So. 2d at 678. The Court, in a short sentence with little explanation, denied the motion for a new trial, stating that the jury's use of the law books was not reason for disturbing the verdict "if it does not appear that any prejudice resulted from the irregularity." *Id.* at 463, 38 So. 2d at 678. The brief for the State, included with the opinion, argued that counsel did not read from the books to the jury and that neither the court nor the counsel were to blame for the books being inappropriately left in the jury room. *Id.* at 462-63.

¶14. The instant case is distinguishable from both *Annaratone* and *Brister*. The issue presented by these two cases is that of extraneous influence upon the jury with respect to law books discovered in the jury room and used in deliberations by the jury. In such cases we require that the party seeking the relief show prejudice. In the case *sub judice*, the *judge* injected the extraneous influence into the jury's deliberation, a qualitatively different proposition. Any material sent into the jury room by the judge carries with it the imprimatur of authority and rises almost to the level of a jury instruction.

¶15. We have not previously considered the precise issue of extraneous influences injected into jury deliberations *by the judge*. However, the Supreme Court of the United States and the courts in two of our sister states have considered this issue, and their analysis is instructive in the case *sub judice*. In *Bates v. Preble*, 151 U.S. 149 (1894), the trial court allowed the whole of a memorandum book to go into the jury room without any sealing or other safeguard to keep the jurors from reading portions of the memorandum book which were not admitted as evidence. *Id.* at 157. The Supreme Court suggested that instructions to the jury to not look at the objectionable portions might have been curative had the material in the rest of the memorandum book been unimportant. *Id.* at 158. The Supreme Court maintained the objectionable sections of the book were "likely to attract the eye of the jury, and accident or curiosity would be likely to lead them, despite the admonition of the court, to read the plaintiff's comments upon the defendants and her private meditations, which had no proper place in their deliberations." *Id.*

¶16. The District Court of Appeals of our sister state of Florida has also addressed this issue in *Yanes v. State*, 418 So. 2d 1247 (Fla. Dist. Ct. App. 1982). In *Yanes*, the judge, in response to the jury request for the law pertaining to trafficking in and possession of cocaine and over defense objection, gave the jury his entire book of jury instructions because "[he didn't] want to take [his] book apart." *Id.* The appellate court, in reversing, stated:

> We do not know if the jury heeded the court's instruction to read only the two marked instructions, or, if it succumbed to temptation and curiosity by considering other charges -- charges other than those earlier orally charged as being applicable to the case. Regardless, the jury had *access* to many instructions of law which were inapplicable and potentially damaging to [the defendant].

\*\*\*

[I]n the instant case, many charges were made available to the jury which were not covered by the charges given.

As to the act being only harmless error, we feel that the jury process must be firmly governed to the end that the jury will decide cases limited strictly to the evidence presented in court and the law charged to them by the court. A slipshod attitude as to such matters can only undermine the acceptance and confidence which our system has earned.

*Id.* at 1248 (emphasis in original).[1]

¶17. In an Oregon case, *State v. Holmes*, 522 P.2d 900 (Or. Ct. App. 1974), the jury, while in deliberations, requested a dictionary and the court provided it over the objections of both attorneys. *Id.* at 905. The appellate court reversed, stating:

The court's action in providing the jury with a dictionary was error. Where counsel made a timely objection and pointed out the improper uses to which a dictionary could be put and the court furnished the dictionary for speculative reasons and without inquiry as to the jury's need, we must assume that prejudice flowed from the injection of unauthorized informational and definitional material into the jury deliberations.

*Id.* (citation omitted).

¶18. In the case *sub judice*, the trial judge sent the entire *Black's Law Dictionary* to the jury room to allow the jury to read the definition of "premeditation." No safeguards were taken to keep the jurors from looking into other portions of the dictionary. At the end of the definition of "premeditation," there is a cross-reference to "malice aforethought." The definition of "malice aforethought" in *Black's Law Dictionary* has been held by this Court to be inconsistent with Mississippi law, and this Court has reversed a jury which relied upon the inconsistent definition. *Nicolaou v. State*, 534 So. 2d 168, 174-75 (Miss. 1988). Clearly, sending to the jury room a law dictionary with a cross-reference to a definition of "malice aforethought" which is contrary to Mississippi law raises not just a possibility, but the probability, that the cross-reference caught the eye of the jury and led them to that incompatible definition. Consequently, the judge's action is certainly to be construed as injecting an extraneous influence, inconsistent with Mississippi law, into the jury room during deliberations, thereby requiring reversal.

¶19. The State raises the argument that no specific allegation was advanced by Collins regarding the reading of the inconsistent definition and no prejudice was shown regarding the submission of the entire dictionary. In the *Bates* case there was no indication that the jurors had actually read the improper portions of the memorandum book; the opinion was written in language of probability, i.e., the objectionable portions would be "likely to lead" the jury to information not properly admitted as evidence. *Bates*, 151 U.S. at 158. Yet the Supreme Court clearly expressed that the lower court's action was improper and reversible error. *Id.* In *Yanes*, the court, in the language quoted *supra*, noted that it did not know whether or not the jury had ventured into instructions and law improperly placed into their hands by the trial judge; the access the jury had to the instructions not given them was prejudicial and, therefore, not harmless error. *Yanes*, 418 So. 2d at 1248. The instant case

parallels both *Bates* and *Yanes*, and therefore reversal is required.

¶20. The key distinction between the reasoning yielding the rule in *Bates* and *Yanes* and the reasoning giving rise to the rule in *Annaratone* and *Brister* is that the extraneous influence was injected into the jury deliberations by the ***court*** and not by accident, as in ***Annaratone*** and ***Brister***, or by some outside party. Because the extraneous influence was introduced into the jury's deliberations by the court and not by accident or some outside party, we hold that a presumption is raised that prejudice flows from the injection of such an extraneous influence. *See **Bates***, 151 U.S. at 158; ***Holmes***, 522 P.2d at 905. The action of a trial judge in giving instructions to a jury or sending evidence to a jury for consideration is substantially and qualitatively distinct from the jury's improper use of law books discovered in the jury room or an extraneous influence injected by an outside party and requires a more stringent standard.

¶21. Additionally, the State argues that this issue was not properly preserved for appeal because a specific objection was not made to the judge's sending of the entire *Black's Law Dictionary* to the jury room for use during deliberations, stating that the defense counsel made only a general objection to giving the jury the definition of "premeditation" and citing Miss. R. Evid. 103. Miss. R. Evid. 103(a) states, in pertinent part:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, *if the specific ground was not apparent from the context.*

Miss. R. Evid. 103(a) (emphasis added). In the instant case, a general objection was made and the context of the objection readily makes apparent the ground for the objection:

> THE COURT: Do you have anything to say about this for the record. I am sending this into the jury room. Do you object? The oral question that was sent out by the Bailiff is they want to know what the word premeditation means. The Court takes the position that the jury is entitled to know what the definition of anything is, just the same as the judge, as the trier of facts.

> MR. BUCKLEY: Your Honor, I'm going to--

> THE COURT: Just a moment. I'm sending it in there so they can read it just like I would read it.

> CT. REPORTER: Is that *Black's Law Dictionary* that your [sic] sending in there?

> MR. BUCKLEY: Yes, and it's on page -- let me give you the year, just in case your Honor. Published 1979 on page 1062.

> THE COURT: That publication is the latest thing out. That dictionary was just sent to me.

> CT. REPORTER: Is that the 5th Edition?

> THE COURT: 5th Edition, *Black's Law Dictionary.*

> CT. REPORTER: The State has no objection?

MR. BUCKLEY: Just record mine on the record for me.

THE COURT: Tell them to read on that second -- well, just give it to them.

We find this objection sufficient under the facts of this case to satisfy the Miss. R. Evid. 103(a) requirement as to specificity.

## CONCLUSION

¶22. The death of Jerry West is tragic; however, the duty of this Court is to assure that each criminal defendant receives a fair trial. The judge's unintentional error in sending the entire *Black's Law Dictionary* into the jury room for the jurors' use in deliberations raises serious questions as to whether Collins received a fair trial. Accordingly, Collins' conviction is reversed and remanded.

¶23. **REVERSED AND REMANDED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS AND McRAE, JJ., CONCUR. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH AND MILLS, JJ.**

**ROBERTS, JUSTICE, DISSENTING:**

¶24. The Majority contends that the trial court erred in two ways (1) by allowing the jury to read Black's Law Dictionary's definition of premeditation, and (2) because of the possibility the jury could have cross-referenced the definition of "malice aforethought" which would violate established Mississippi case law. The trial judge did not commit reversible error and, as such, I respectfully dissent.

¶25. In *Brister v. State*, 86 Miss. 461, 38 So. 678 (1905), the defendant was found guilty following the jury obtaining and consulting law books bearing on the case. One of the jurors found in the jury room the relevant statutes pertaining to the case being heard, and the juror then proceeded to read the material to fellow jurors to expound the law as there written and to argue the case to them. Defendant asserted that the guilty verdict would not have been reached had the jury not engaged in the above conduct. *Brister*, 86 Miss. at 462. This Court found that although the jury engaged in irregular conduct, no prejudice from the irregularity resulted and, therefore, it was not a ground for overturning the verdict. *Brister*, 86 Miss. 463, 38 So. at 678. Similarly, in a rape case, this Court held that the jury's reading from law books found in the jury room about an automobile accident case and history of the courthouse did not prejudice the defendant by influencing the verdict of the jury. *Annaratone v. State*, 399 So. 2d 825, 827 (Miss. 1981). Therefore, prejudice to the defendant must be shown before a verdict will be overturned.

¶26. Collins alleges the jury COULD have leafed through the dictionary and found cross-referenced definitions, including malice aforethought. This Court has held that Black's Law Dictionary's definition of malice aforethought is not consistent with Mississippi law and has reversed a jury

conviction in which the jury relied on the inconsistent definition of malice aforethought. *Nicolaou v. State*, 534 So. 2d 168 (Miss. 1988). Collins contends the possibility of the jury reading the definition of malice aforethought is *per se* prejudicial to his rights to a fair trial. There is no indication or specific allegation that the jury consulted any definitions other than those upon which they were instructed to focus their attention. Although Collins was convicted of murder, he does not show how he was prejudiced by the submission of the entire dictionary or that the jury did, in fact, rely upon the dictionary definition of malice aforethought when reaching its verdict.

¶27. After the jury requested a definition of premeditation, the trial court judge sent in Black's Law Dictionary and directed the jury to read the definitions of premeditation contained on page 1062. Defense counsel only made a general objection to giving the jury the definition of premeditation and Black's Law Dictionary. Defense counsel did not object with specificity and point out the improper use for which the dictionary could be used. After the jury returned the verdict, defense counsel did not request that the jury be questioned as to their reliance upon the definition of premeditation or malice aforethought.

¶28. Collins now asks this Court to hold the trial court in error, although an objection stating the grounds for error was not made and the trial court was not permitted an opportunity to correct the alleged misconduct. Mississippi Rule of Evidence 103 (a) (1) states that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. The rule further states that if the ruling is one admitting evidence, a timely objection or motion to strike must appear of record, stating the specific ground of objection. The Majority relies on an Oregon case, *State v. Holmes*, when making its argument that prejudice is assumed when unauthorized information and definitional material is injected into the jury deliberations by the court. *State v. Holmes*, 522 P.2d 900, 905 (Or. Ct. App. 1974). However, the Oregon case states specifically that prejudice was assumed only because "counsel made a timely objection and pointed out the improper uses to which a dictionary could be put and the court furnished the dictionary for speculative reasons and without inquiry as to the jury's need. . . ." *Id.* at 905. The *Holmes* case differs from the case *sub judice* in that the trial judge sent the dictionary into jury deliberations specifically to give them a definition of "premeditation" and counsel gave no specific objection explaining that a dictionary could be used improperly.

¶29. Collins did not afford the trial judge the opportunity to correct or investigate the alleged error, in violation of the above rule. It is mere conjecture to believe that the jury looked up the offending definition and voted in reliance thereon. Collins has not successfully offered nor shown any proof that the jury did engage in misconduct. Further, Collins failed to make a specific objection and bring the matter to the attention of the trial court for consideration. Although the submission of the entire dictionary to the jury was irregular and possibly improper, it is not *per se* prejudicial to the defendant's right to a fair trial without a showing of harm or misconduct. Collins has failed to show that the jury actually relied upon the Black's Law Dictionary's definition of malice aforethought in making its verdict, and therefore his reliance on *Nicolaou* is inapplicable. This issue was not properly preserved for appeal and, therefore, this issue is without merit.

¶30. Finally, the jury is presumed to have acted in accordance with the overall instruction(s) of the Court, and there is no showing otherwise. *Williams v. State*, 684 So. 2d 1179, 1209 (Miss.1996); *see also Walker v. State*, 671 So. 2d 581, 617 (Miss. 1995).

¶31. For the foregoing reasons, I respectfully dissent.

**SMITH AND MILLS, JJ., JOIN THIS OPINION.**

1. Florida, with respect to extraneous influences upon the jury not injected by the judge, holds, as do we in *Annaratone* and *Brister* that, in the absence of evidence that the jury was improperly influenced, there is no error. *See Trotter v. State*, 576 So. 2d 691, 693 (Fla. 1991).