KITCHENS, Justice,
Dissenting:
¶ 37. When the jury room is infiltrated by influences or information not authorized by the court, and such things in any way bear upon the issues being tried, however inconsequential the intrusion may seem, ,it is as if some foreign substance has found its way into delicate machinery, or, allegorically speaking, a pea has been placed under the mattress of a princess.
¶ 38. Under our system of justice, every person charged with a crime is entitled to a fair trial before an impartial jury of his or her peers. Miss. Const. art. 3, § 26; U.S. Const, amend. VI. During deliberations, the jury should consider only the evidence developed at trial. Collins v. State, 701 So.2d 791, 794 (Miss.1997). “A jury’s verdict must be based upon the evidence and not affected by extraneous influences.” Fuselier v. State, 468 So.2d 45, 57 (Miss.1985). This Court has held that, where an extraneous influence is introduced into the jury’s deliberation by accident or from some outside source, the extraneous influence must be shown to be prejudicial before a new trial is warranted. Collins, 701 So.2d at 796.
¶ 39. Notwithstanding our requirement that some prejudicial effect of the unauthorized material be proven as a prerequisite to a new trial, we have promulgated a rule that, in almost every scenario imaginable, precludes the development of such proof. The principal objective that likely generated Mississippi Rule of Evidence 606(b) — to insulate and protect jurors from post-trial inquiries about their deliberations — is laudable. However, if the jurors themselves are not permitted to relate what did or did not influence their decisions, how is the prejudicial effect of an extraneous influence to be determined?" The answer is that, in almost all such cases, a prejudicial effect may be impossible to identify or to quantify. Thus, in my judgment, there is a strong case to be made for presuming that such unauthorized influences in the jury room always are prejudicial, or for eliminating altogether the requirement of proof of a prejudicial effect. The matter at hand provides a compelling example of why we should not require a litigant to prove the improvable in order to seek relief when unauthorized matter has invaded a jury room. The parties have agreed that an extraneous influence did enter this jury room. There is no way to assess its impact. At the same time, we cannot reliably divine that it had no impact.
¶ 40. Certainly, extraneous information or material in a jury room is a knife that can cut either way, depending upon its nature, character, and, sometimes, its source. It is not difficult to imagine — or, in the case of more seasoned members of the trial bar, to recall — instances in which unauthorized intrusions into the jury room created considerable anguish for the prosecution. In the next such case, the party seeking relief may be the State. Neither the prosecution nor the defense should be saddled with the burden of proving prejudice as a prerequisite to a meaningful remedy. In the end, the thing that must be protected unfailingly is the efficacy of the process itself; the jury room must be sacrosanct, so that the litigants, the lawyers, and the public at large may have as much confidence as can be built into the system *147 that juries reach their decisions on the basis of nothing other than the evidence and the law, both of which have come to the jurors with the knowledge and approval of the presiding judge.
¶ 41. In this case, the trial judge gave a preliminary instruction that informed the jurors that they “[were] not permitted to ... make any independent investigation.” Further, the trial court explained to the jury that “[a]fter both sides finally rest, [the court] will review the instructions of law with the attorneys and then they will be read to you.”
¶42. Following the first day of trial, one of the jurors did make an independent investigation by researching the meaning of the words neglect and abuse in what is described in the majority opinion as a standard dictionary. The juror then recorded those definitions onto a sheet of paper and carried the paper into the jury room on the following day, without the knowledge or approval of the judge. On the second day of trial, after receiving the jury instructions and deliberating for fifty minutes, the jurors sent out the following question: “Is negligence the same thing as abuse?” The trial court, quite correctly, sent the jury a note with the following response: “You must rely on the Court’s instructions on the law already given to you. Please continue your deliberations.” The jury resumed its deliberations for approximately half an hour, then returned a guilty verdict.
¶ 43. As evidenced by the jury’s note to the trial judge asking whether negligence was the same thing as abuse, it is clear that the jurors were concerned about the meanings of those words. Even though I would not require Rutland, or any other litigant in such circumstances, to prove prejudice, it is clear to me that a juror’s improper introduction of dictionary definitions of the words neglect and abuse into the jury’s deliberations substantially prejudiced Rutland.
¶ 44. Rutland was indicted under Mississippi Code Section 97 — 5—39(2)(a), which provides, in part:
Any person who shall intentionally (i) burn any child, (ii) torture any child or, (iii) except in self-defense or in order to prevent bodily harm to a third party, whip, strike, or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse of a child....
Miss.Code Ann. § 97 — 5—39(2)(a) (Rev.2006) (emphasis added). She was not indicted under the portion of Mississippi Code Section 97-5-39, which provides that:
Except as otherwise provided in this section, any parent, guardian or other person who willfully commits any act or omits the performance of any duty, which act or omission contributes to or tends to contribute to the neglect or delinquency of any child ... shall be guilty of a misdemeanor....
Miss.Code Ann. § 97-5-39(l)(a) (Rev.2006) (emphasis added).
¶ 45. Further, while neglect and abuse may have similar meanings in the dictionary utilized by the juror, the legal distinctions found in Mississippi Code Section 97-5-39 are the difference between less than one year in prison and life in prison. The juror’s non-legal, dictionary definitions of abuse and neglect, brought into jury deliberations from an outside source, were grossly out of place in a venue that our government of laws, especially the judicial branch, from the inception of our nation, has gone to extraordinary lengths to keep inviolably free of improper influences. It *148 bears reiteration that the prosecution, the defense, and a very astute trial judge all agreed that these outside definitions should never have entered the jury room. That the definitions may have been more or less accurate, or even consistent with applicable law, is not the point. Obviously, the point is that they did not come from the solitary, authorized giver of the law in this case, the trial judge himself. This defilement of the process irreparably contaminated the verdict of the jury.
¶ 46. Rutland argued that the use of these definitions was prejudicial to her case because the jury could have relied on the definition of neglect, a misdemeanor, but still have convicted her of felony abuse if the jury had determined that neglect and abuse had the same meaning. Rut-land was not charged with, nor was she indicted for, child neglect. The jury was not instructed regarding the misdemeanor of child neglect. Clearly, one of the jurors unilaterally and wrongfully introduced the concept of neglect into the jury deliberations following private, independent, and unauthorized research. The juror’s research dealt with a concept that was introduced into the trial by neither the court nor the parties. We cannot rule out that the jury, which had sought but failed to receive definitions of these terms from the court, determined on the basis of information provided by one of their number that neglect was tantamount to abuse, and that if they believed there had been neglect they could appropriately find the defendant guilty of abuse. However, there are at least two problems with that analysis. First, Rutland was not charged with neglect. Second, the definitions of both neglect and abuse were obtained from an extraneous, clandestine source and not from the court. The only way to repair the morass of mischief caused by this juror’s disregard of the court’s clear instructions not to engage in independent investigation of the case is to afford Rutland a new trial, free of extraneous influences.
¶ 47. I would reverse this case and remand it to the trial court for a new trial.
DICKINSON, P.J., JOINS THIS OPINION. CHANDLER, J., JOINS THIS OPINION IN PART.