BRIDGES, J., for the Court.
¶ 1. The grand jury of Madison County indicted Kenneth Bernard Webb for burglary. He was tried and convicted on April 8, 2002, and was sentenced to serve twenty-five years with ten years suspended with five years’ post-release supervision and ordered to pay court costs. From that conviction and sentence he appeals to this Court. The issues are stated verbatim.
STATEMENT OF THE ISSUES
I. WEBB’S CONVICTION MUST BE REVERSED BECAUSE THE INDICTMENT FAILS TO CHARGE THE ESSENTIAL ELEMENTS OF THE CRIME OF BURGLARY.
II. WEBB’S CONVICTION MUST BE REVERSED BECAUSE THE TRIAL COURT ERRONEOUSLY DENIED WEBB’S REQUESTED INSTRUCTION D-5.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN SUSTAINING THE STATE’S PEREMPTORY CHALLENGE TO JUROR JACKSON.
IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN SUSTAINING THE STATE’S PEREMPTORY CHALLENGE TO JUROR SMITH.
V. THE TRIAL COURT ERRED IN SUSTAINING THE STATE’S REVERSE-BATSON CHALLENGE TO JUROR WILLIAMS.
FACTS
¶ 2. Upon returning from church on Sunday April 11, 1999, Thelma Coleman discovered the door to her home opened and her VCR, computer and her daughter’s piggy bank stolen. Besides Ms. Coleman, the State presented at trial two witnesses, Tony Taylor and Quincy Jones, both of whom the State alleged to be accomplices of Webb in the burglary.
¶ 3. Taylor testified that he was with Webb during the burglary, and that he took the piggy bank and VCR while Webb took the computer. He also testified that on the very same day as the burglary, they went to the home of Quincy Jones with the stolen items. After going to the bank to withdraw money, Jones bought the computer for three hundred dollars which Taylor and Webb split evenly.
¶ 4. Taylor further testified that it was after his arrest on a different charge in 1999, he decided to cooperate with the police. While talking to Detective Albert Jones, with the Madison County Sheriffs Office, he made a voluntary statement relating the facts of the Coleman burglary. By the time of the trial, Taylor had pled guilty to the burglary and testified that he wanted to get his life together and go straight, that he was the one who approached Detective Jones about cooperating with the prosecution, and that nothing was promised to him in exchange for his cooperation.
¶ 5. Quincy Jones testified that Webb was involved with selling him the computer. He stated that three or four days after the burglary, Webb approached him and asked him if he knew of anyone who would buy the computer for three hundred dollars. Jones also identified Webb as the person who came to see him about the computer, which Jones had bought from Webb for three hundred dollars. While admitting that he did want to get out of the Hinds County Detention Center, Jones denied being offered anything by the prosecution for his testimony.
¶ 6. During trial, Webb chose not to testify in his own defense. Webb was found guilty and sentenced to twenty-five years, *402 in the custody of the Mississippi Department of Corrections, with ten years suspended.
¶ 7. This case was remanded to the trial court for further findings by order of this Court dated March 31, 2003, filed April 1, 2003, and now that this Court has the findings of the trial judge, we proceed with our decision.
ANALYSIS
I. DID THE INDICTMENT FAIL TO CHARGE AN ELEMENT OF BURGLARY?
¶ 8. Webb argues that the indictment fails to allege the essential elements of the underlying offense of larceny. The State argues that because Webb never raised this issue before or during trial he is restricted from doing so on appeal. However, the Mississippi Supreme Court, in State v. Berryhill, stated:
This Court has squarely held that challenges to the substantive sufficiency of an indictment are not waivable. Thus, they may be first raised at anytime, including on appeal. See Copeland v. State, 423 So.2d 1333 (Miss.1982) (substantive failure of an indictment to charge a crime was not waivable and not subject to amendment). See also Burchfield v. State, 277 So.2d 623 (Miss. 1973); Monk v. State, 532 So.2d 592 (Miss.1988), superseded by rule on other grounds (objection to an indictment that failed to charge an essential element of the crime sought to be charged may be raised for the first time on appeal).
State v. Berryhill, 703 So.2d 250, 254(¶ 16) (Miss.1997).
¶ 9. The Mississippi Supreme Court also stated that although the exact language stated in the statute for a crime was not on the indictment, having the statute enumerated on the indictment and including facts, were sufficient to give the defendant notice of the crime he was being charged with, therefore, giving him an opportunity to prepare a defense. Williams v. State, 772 So.2d 406, 409(¶ 13) (Miss.2000).
¶ 10. The statute for burglary of an inhabited dwelling, Mississippi Code Annotated section 97-17-23, states as follows:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with the intent to commit some crime therein, shall be punished by imprisonment in the penitentiary not less than three nor more than 25 years.
Miss.Code Ann. § 97-17-23 (Rev.2000).
¶ 11. The exact language on the Madison County indictment reads as follows:
Tony Taylor and Kenneth Bernard Webb late of the county aforesaid, on or about the 11th day of April, 1999, in the county aforesaid and within the jurisdiction of this court, did willfully, unlawfully, feloniously, and burglariously break and enter the dwelling house of Thelma Coleman, located at 616 North Livingston Road, in Madison County, Mississippi, with the intent to commit a larceny therein, in violation of Mississippi Code Annotated § 97-17-23 (1972), as amended, against the peace and dignity of the State of Mississippi.
¶ 12. When the crime being prosecuted requires that it be committed in conjunction with some other crime, it is sufficient to enumerate the specific elements of the crime charged and then to name the additional crime. Stevens v. State, 808 So.2d 908, 920(¶ 35) (Miss.2002) (indictment sufficient for capital murder while committing an aggravated assault if *403 it gives the elements of murder and then names the underlying offense of aggravated assault). The indictment charging Webb with burglary described each element of burglary, then named “larceny” as the crime intended to be committed after the breaking and entering. That is a proper indictment, as the elements of the larceny need not also be stated in the indictment. Therefore, this issue is without merit.
II.DID THE TRIAL COURT ERR IN FAILING TO GRANT JURY INSTRUCTION D-5?
¶ 13. Regarding this issue, Webb argues that the trial court erred in denying him jury instruction D-5, and such denial meant that no instruction was given regarding the care and caution given to the testimony of accomplices. Jury instruction D-5 referred to “an informer’s testimony” which had to be viewed with “great care and caution.”
¶ 14. “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss. Ct.App.2002).
¶ 15. In Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990), the court held that a defendant was not entitled to an instruction which incorrectly stated the law, was without foundation in the evidence or was stated elsewhere in another instruction.
¶ 16. The record reflects that this proposed instruction was for “an informer’s testimony,” or for one who “for pay or for immunity from prosecution” provides evidence through his or her testimony. However, there is nothing in the record that illustrates that either Taylor or Jones received any pay or any immunity from prosecution. In addition, Taylor was not an informer but rather a co-defendant. Also, there is no evidence that either Taylor or Jones was impeached on cross-examination by any prior inconsistent statements, which was the basis of Ferrill v. State, 643 So.2d 501 (Miss.1994), the case relied upon by Webb. Instead the trial court granted a defense instruction which comprehensively dealt with factors to be considered when evaluating the credibility of witnesses. Therefore, jury instruction D-5 was properly denied.
III. DID THE TRIAL COURT ERR IN SUSTAINING PEREMPTORY CHALLENGES TO JUROR JACKSON?
IV. DID THE TRIAL COURT ERR IN SUSTAINING PEREMPTORY CHALLENGES TO JUROR SMITH?
¶ 17. “On review, the trial court’s determinations under Batson are afforded great deference because they are, in large part, based on credibility.” McGilberry v. State, 741 So.2d 894, 923 (¶ 118) (Miss.1999) (citing Coleman v. State, 697 So.2d 777, 785 (Miss.1997)). “This Court will not reverse any factual findings relating to a Batson challenge unless they are clearly erroneous.” Id. The Mississippi Supreme Court has held that the trial judge is afforded great deference in determining if the expressed reasons for exclusion of a venire person from the challenged party is in fact race neutral. Stevens v. State, 806 So.2d 1031, 1047-48 (¶ 70) (Miss.2001) (citing Tanner v. State, 764 So.2d 385, 393 (¶ 14) (Miss.2000)). In Stewart, the court held that “one of the reasons the trial court is granted such deference in a Batson issue is because the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality.” Stewart v. State, 662 So.2d 552, 559 (Miss.1995).
*404 ¶ 18. Webb contends that the trial court erred when it sustained the State’s peremptory challenges on jurors Jackson and Smith. He believes the trial court erred because the reasons given by the State were suspect and the trial court did not make a sufficiently clear ruling as to why these reasons were considered “race neutral.” Webb also contends that the trial court erred when after counsel for Webb exercised three peremptory challenges, the prosecution raised a Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) challenge, and then required defense counsel to state his reasons for his peremptory challenges. At the time, the State made no showing that Webb was exercising his challenges in a discriminatory manner.
¶ 19. The court in Davis v. State, 660 So.2d 1228, 1242 (Miss.1995), reiterated a list of reasons that are acceptable as race neutral. “Included among those reasons: age, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, short term employment.” Id. The Mississippi Supreme Court has also accepted demeanor as a legitimate, race neutral basis for a peremptory challenge. Walker v. State, 671 So.2d 581, 628 (Miss.1995). However, while demeanor can be sufficient to support a claim that a peremptory strike was race neutral, the trial judge must assess all of the evidence before him. Stevens v. State, 806 So.2d at 1047-48.
¶ 20. We will not reverse a trial judge’s factual findings on this issue unless they appear clearly erroneous or against the overwhelming weight of the evidence. Walters v. State, 720 So.2d 856, 865(¶ 28) (Miss.1998). According to the record, the trial court’s findings on Webb’s challenges are not clearly erroneous nor against the weight of the evidence.
¶ 21. With regards to jurors Jackson and Smith, the record reflects that the trial court found that there was no pattern of racial discrimination on the part of the prosecution. In fact, the record shows that the prosecution had already accepted four black jurors when the defense objection was made. In addition, the trial judge required the State to recite its reasons for the strikes to make the record more complete and allow the trial court to analyze the State’s use of peremptory strikes to assure the trial court that the ruling that no pattern had been made was indeed correct.
¶22. The reasons given by the State for rejecting these jurors are that one lived in a high crime area and the other had an incomplete juror card (not employed). These reasons are included in the list of non-racial reasons given in the Davis case. In the trial judge’s findings of fact, he stated that the trial court paused after the State gave its reasons, which afforded Webb an opportunity to offer rebuttal to the State’s reasons for the strikes, but Webb did not and the court continued with jury selection. Webb neither made nor attempted to make a subsequent showing of a prima facie case.
¶23. Because the trial court required the State to give reasons for the use of peremptory strikes when a prima facie case had yet to be established, Webb was afforded more protection from the discriminatory use of peremptory strikes than is required under the current law. Therefore, we find this issue is without merit.
V. THE TRIAL COURT ERRED IN SUSTAINING THE STATE’S REVERSE-BATSON CHALLENGE TO JUROR WILLIAMS.
¶ 24. In discussing the final issue, it should be noted that the information pro *405 vided in the appellant’s brief makes it impossible to determine which juror was involved. However, it is our interpretation and that of the State’s brief that the juror involved is, in fact, juror Christopher Howard and not juror Shirley Williams, as the appellant’s brief leads us to believe.
¶ 25. During voir dire, the defense wanted to strike Howard, and the reason given was because he worked as a director of finance for a state agency. Webb believes that the trial court erred in rejecting his reason as being non-discriminatory on the basis of race.
¶ 26. Webb cites Taylor v. State, in which the supreme court held that it was reversible error to require the defendant to give reasons for his peremptory challenges without first requiring the State to make a prima facie case of racial discrimination. Taylor v. State, 733 So.2d 251, 258-59 (¶ 32-34)(Miss.l999). The record reflects that the State did raise a Batson challenge for juror McKie and after that the judge required race neutral reasons from everyone, State and defense. At one point the trial judge wanted counsel to give reasons for accepting jurors also. As stated above, he required the reasons for the use of the peremptory strikes so as to have a clearer record.
¶ 27. As for the reason given for juror Howard, although employment is cited in the Davis case as being a race neutral reason, the judge is afforded great deference and he is in the best position to observe the attorneys as well as all the jurors. Stewart, 662 So.2d at 559. As stated in Stevens, a judge must look at all of the evidence before him. Stevens, 806 So.2d at 1047-48. Therefore, we find this issue is without merit.
¶ 28. We affirm as to all issues.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE LAST TEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION.