# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01544-SCT

*LONI MARIE RUTLAND*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2007 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | FRANKLIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM ANDY SUMRALL |
| | THOMAS P. WELCH, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/17/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Loni Marie Rutland was convicted of felony child abuse in a jury trial in the Circuit Court of Franklin County. Rutland was sentenced to twenty years in the custody of the Mississippi Department of Corrections, with ten years suspended and ten years to serve. The trial court denied Rutland's post-trial motions, and she appealed her conviction. The Court of Appeals affirmed Rutland's conviction and sentence. Rutland filed a petition for writ of

certiorari with this Court, and we granted the petition. Having now considered the issues before us, we affirm the Court of Appeals' judgment.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     While in Rutland's care, Rutland's seventeen-month-old daughter, A.T.,[1] suffered several injuries, including a fractured skull and a broken leg. Rutland and A.T. lived with Rutland's sister, but they also stayed two-to-three nights a week with Rutland's boyfriend, Andrew Jones, who lived with his parents in Franklin County.

¶3.     According to Rutland and Jones, on August 1, 2006, A.T. fell off a three-foot plastic slide and landed on her head. Later that night, Rutland noticed bruising under A.T.'s eyes. She took A.T. to a local clinic the next morning. A.T. was diagnosed with a sinus infection and prescribed antihistamine. Rutland testified that when they returned home, A.T. was disoriented from the medicine, tripped over a puppy, and struck her head on an end table. Rutland and Jones took A.T. to the hospital, where A.T. saw Dr. Kevin Hubbard. A CT scan was taken of A.T.'s head. Rutland and Jones testified that they were told the CT scan results were blurry, but from what the doctor could tell, the results were normal. Dr. Hubbard instructed Rutland to give A.T. Tylenol for pain and to follow up with her doctor the next day. Rutland testified that she did not read the instructions on the discharge papers and did not go to a follow-up appointment with her doctor.

¶4.     On August 27, 2006, A.T. was again taken to the hospital after she woke up crying and could not walk on her left leg. Rutland testified she had noticed the day before that

---

[1] In order to protect the identity of the minor child, we have substituted initials in place of the child's name.

2

A.T.'s left ankle was swollen. Rutland attempted to treat the swelling at home with ice packs. An X-ray showed three breaks in A.T.'s left leg and dislocation of her left-ankle joint. A.T. was seen again by Dr. Hubbard. Rutland explained the breaks by telling Dr. Hubbard that A.T. would sometimes put her legs through the slats in her crib. Rutland also testified that A.T. had fallen several times while running in the yard at the house of Rutland's sister and that A.T. possibly had injured her leg then. Dr. Hubbard inquired about a large bruise on A.T.'s forehead. Rutland explained that A.T. would sometimes hit her head against the crib. Rutland also stated that A.T. had fallen into the side of an end table.

¶5. Unsatisfied with Rutland's explanations of the injuries, Dr. Hubbard requested a consultation with social services. Rutland became defensive when questioned by social workers and told them that she took care of her child "twenty-four/seven" and that she did not injure A.T.

¶6. After the consultation, A.T. was taken to the University of Mississippi Medical Center (UMMC), where Dr. Kevin Keaton performed a full-body CT scan. The scan revealed fractures on both sides of A.T.'s skull in addition to the fractures to her left leg and the dislocation of her ankle. Surgery was performed on her leg and ankle the next morning. It was determined that the fractures had occurred recently. The Mississippi Department of Human Services sent a sheriff's deputy to inspect Rutland's home. Photographs were taken of the end table and crib. The sides of the crib where A.T. slept were lined with blankets and pillows.

¶7.   Rutland was indicted on two counts of felony child abuse.[2]  Count I addressed the facial and head injuries, and Count II addressed the injury to A.T.'s leg.  This case ultimately went to trial before a jury in the Circuit Court of Franklin County, Judge Forrest A. Johnson, Jr., presiding.  At the close of the State's case-in-chief, Judge Johnson denied Rutland's motion for a directed verdict; however, at the close of Rutland's case-in-chief, Judge Johnson found that insufficient evidence had been presented regarding the cause of A.T's facial and head injuries and therefore granted a directed verdict in favor of Rutland as to Count I.  Judge Johnson denied Rutland's motion for a directed verdict as to Count II, and the jury subsequently found Rutland guilty of felonious child abuse as charged in Count II.[3]

¶8.   During deliberations, the jury sent a note to the trial judge with the following question: "Is negligence the same thing as abuse?"  The trial court responded by sending a handwritten note to the jury that it ". . . must rely on the Court's instructions on the law already given to you.  Please continue your deliberations."  The jury had received

---

[2] Rutland was indicted under Mississippi Code Section 97-5-39(2)(a) (Rev. 2006), which states:

> Any person who shall intentionally (I) burn any child, (ii) torture any child or, (iii) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm shall be guilty of felony child abuse of a child and, upon conviction, shall be sentenced to imprisonment in the custody of the Department of Corrections for life or such lesser term of imprisonment as the court may determine, but not less than ten (10) years . . . .

[3] The facts up to this point are essentially a recitation of the facts as stated in the Court of Appeals' opinion. ***Rutland v. State***, ___ So. 3d ___, 2010 WL 522689, **1-2, ¶¶3-8 (Miss. Ct. App. Feb. 16, 2010).  However, additional facts from the record also have been added.

4

instructions on the elements of felony child abuse and the term "serious bodily harm."[4] After receiving the trial court's response, the jury continued deliberating for approximately half an hour and then returned a guilty verdict.

¶9.     Some time after the jury's verdict, Rutland's boyfriend, Andrew Jones, while at a local gas station, saw an individual who had served as a juror in Rutland's trial. The juror told Jones that he and another juror had been confused about the definition of "neglect," so they had looked up the definition and had determined that "abuse" and "neglect" meant the same thing.[5] According to Jones, this individual told him that the two jurors then had determined that Rutland was guilty of child abuse. After Jones became aware of this information, he told Rutland's friend, Bridget Thompson, who subsequently called Rutland's attorney and informed him of the juror's purported statement.

¶10.    Rutland filed a Motion for Judgment Notwithstanding the Verdict (JNOV), Or in the Alternative, for a New Trial, claiming, *inter alia*, that the jurors had failed to follow the jury instructions given by the trial court, because certain jurors had used dictionary definitions during their deliberations; therefore, according to Rutland, at the very least, a new trial was warranted in the interests of justice. The State conceded that "one of the jurors did look up

---

[4] Submitted Jury Instruction C-11 (given by the trial court as Jury Instruction #11) informed the jury, *inter alia*, "that the term serious bodily harm, as used in other instructions of the court [i.e., the elements instruction] means bodily injury which creates a substantial risk of death, or permanent or temporary disfigurement, or impairment of any function of any bodily organ . . . ." Rutland was not indicted for child neglect, and the jury did not receive any instructions on child neglect.

[5] Rutland's post-trial motion states that the juror looked up only the definition of neglect. In her petition for writ of certiorari, however, Rutland asserts that the juror looked up two definitions: neglect and abuse.

the definitions of the words 'neglect' and 'abuse' and brought these definitions into the jury room;" however, according to the State, Rutland was not prejudiced by the misconduct. As to this issue, the trial court found that Rutland was not prejudiced by the juror's misconduct. In the end, the trial court entered an order thoroughly addressing the issues raised by Rutland in her motion for JNOV and motion for a new trial, and denied these post-trial motions.

## PROCEEDINGS IN THE COURT OF APPEALS

¶11. Before the Court of Appeals, Rutland presented the following issues: (1) the trial court erred in denying her motion for judgment notwithstanding the verdict; (2) the verdict was against the overwhelming weight of the evidence; and (3) the trial court erred when it failed to grant a new trial due to juror misconduct. *Rutland*, 2010 WL 522689, at *1, ¶2. After thoroughly discussing the issues, the Court of Appeals found no error and affirmed Rutland's conviction and sentence. *Id.*

## DISCUSSION

¶12. In Rutland's petition for writ of certiorari, she argues the following two issues: (1) the Court of Appeals erred in affirming the trial court's denial of judgment notwithstanding the verdict because an essential element of the crime of felony child abuse was not proven; and (2) the Court of Appeals erred in finding that a juror's act of misconduct was not prejudicial.

¶13. Even though Rutland submits two issues for us to consider today, under Mississippi Rule of Appellate Procedure 17(h), we have the authority to limit the question for review upon our grant of certiorari. *Walton v. State*, 998 So. 2d 971, 975 (Miss. 2008). With this

6

in mind, although we will address briefly Rutland's first issue, our main focus today will be on the second issue.  Likewise, we restate the issues for the sake of today's discussion.

## I.  WHETHER THE TRIAL COURT ERRED IN DENYING RUTLAND'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR IN THE ALTERNATIVE, FOR A NEW TRIAL.

¶14.    Like the defendant in *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), Rutland, in her petition for writ of certiorari, combines her arguments regarding the legal sufficiency of the evidence and the overwhelming weight of the evidence.  As set out in Issue Number 1 in her petition for writ of certiorari, Rutland titles this issue "Denial of JNOV-Essential Element Not Proven."  Rutland then states, *inter alia*:

> The COA ruled that the trial court did not err in denying Petitioner's motion for new trial based on a verdict against the overwhelming weight of the evidence.  In *Bush v. State*, 895 So. 2d 836 (¶16) (Miss. 2005), the Court reaffirmed that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (citing *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).
>
> . . .
>
> [T]he COA erred in not reversing and rendering, or at the very least, reversing and remanding for a new trial.

¶15.    Without belaboring the point, *Bush* offers guidance to the practitioner in distinguishing between an argument challenging the legal sufficiency of the evidence in seeking the grant of a judgment notwithstanding the verdict, as opposed to an argument challenging the overwhelming weight of the evidence in seeking the grant of a new trial. *Bush*, 895 So. 2d at 842-45.  Thus, giving Rutland the benefit of the doubt, we assume, *arguendo*, that Rutland, as she did before the Court of Appeals, again is challenging both the

7

legal sufficiency of the evidence and the overwhelming weight of the evidence. We quickly dispatch this issue by stating that the record before us and the applicable law undergird the Court of Appeals' decision as to these issues. The Court of Appeals thoroughly addressed these issues and set out the evidence in the record which supported its findings that the evidence was legally sufficient to sustain the guilty verdict and that the guilty verdict was not so contrary to the overwhelming weight of the evidence that the court, on appeal, would be sanctioning an unconscionable injustice by allowing the guilty verdict to stand. We thus adopt the reasoning of the Court of Appeals on these issues. *Rutland*, 2010 WL 522689, at **2-4, ¶¶9-20.

¶16. Finding this issue to have no merit, we now address what we deem to be the critical issue before us.

## II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL BASED ON JUROR MISCONDUCT.

¶17. The Court of Appeals thoroughly addressed this issue and found no merit in Rutland's assertions. *Rutland*, 2010 WL 522689, at **4-5, ¶¶21-26. While we agree with the Court of Appeals' analysis and its disposition, we take this opportunity to revisit the issue of alleged juror misconduct which surfaces post-trial, and to expand the Court of Appeals' discussion on this issue.

¶18. The standard of review for the grant or denial of a motion for new trial is abuse of discretion. *Irby v. State*, 49 So. 3d 94, 103 (Miss. 2010) (citing *Miller v. State*, 980 So. 2d 927, 929 (Miss. 2008)). Uniform Circuit and County Court Rule 10.05 sets out grounds on which the trial court *may* grant a new trial. For the sake of today's discussion, these grounds

8

include, *inter alia*, "[i]f required in the interests of justice," and "[i]f the jury has received any evidence, papers or documents, not authorized by the court . . . ." URCCC 10.05(1), (4).

¶19.    Rutland argues that, because of the juror's conclusion that "abuse" and "neglect" meant the same thing, she was essentially convicted of neglect, a crime for which she was not indicted. The State argues that the juror's use of the definition(s) was not prejudicial and did not amount to reversible error.

### A.      Mississippi Rule of Evidence 606(b)

¶20.    Rutland focuses much of her argument on the assertion that, during deliberations, the jury – through the use of improper extraneous information – determined that neglect and abuse had the same meaning, and, therefore, Rutland was guilty of abuse. Rutland's argument is based on a juror's statement, which is deemed improper for consideration under our Rules of Evidence. Mississippi Rule of Evidence 606(b) governs inquiries into the validity of verdicts and states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or *evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes*.

(Emphasis added.) The purpose of Rule 606(b) is to protect jurors from fear of being interrogated about their actions or mental processes and to allow the jury to deliberate freely.

9

*Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss. 1998), *overruled on other grounds by Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 39, 42-43 (Miss. 2003).

¶21. Under Rule 606(b), jurors may not testify as to how extraneous information affected the verdict. *James v. State*, 912 So. 2d 940, 951 (Miss. 2005) ("[I]t would be inappropriate, and in violation of M.R.E. 606(b), for any juror to be questioned with regard to whether or not the extraneous information actually altered his verdict."); *Perkins v. Dauterive*, 882 So. 2d 773, 781 (Miss. Ct. App. 2004) (citing *Gladney v. Clarksdale Beverage Co.*, 625 So. 2d 407, 414, 419 (Miss. 1993)) ("A juror may only testify as to extraneous information or outside influence introduced by other jurors or other sources, and may not testify as to how that information or influence affected the verdict."). Under the plain language of Rule 606(b), a juror's statement concerning the effect that extraneous information had on the verdict also is inadmissible.

¶22. Rutland bases her argument on the assertion that the jury improperly used the definition of neglect to reconcile the supposed differences between abuse and neglect. This argument is based on a juror's statement that "he and another juror were confused about the definition of the word 'neglect' so they looked up the word in a dictionary and concluded that the words 'neglect' and 'abuse' meant the same thing, *so they determined that the Defendant was guilty of child abuse*." (Emphasis added.) The juror's statement relates to how extraneous information affected the jury's verdict. Thus, the juror's statement is improper under our Rules of Evidence. Rutland may not base her argument for a new trial on a statement that is prohibited by our Rules.

### B. Prejudice

10

¶23. In addition to improperly basing much of her argument on the juror's statement, Rutland also fails to demonstrate how she was prejudiced by the juror's impropriety. *See Brister v. State*, 86 Miss. 461, 463, 38 So. 678, 678 (1905) (The jury's verdict will not be disturbed unless it appears that prejudice resulted from the juror's misconduct.).

¶24. When the trial court is presented with an allegation of juror misconduct, the court must determine what communication was made and what it contained. *Gladney*, 625 So. 2d at 419. Once this determination is made, the trial court must decide whether it is reasonably possible that the improper communication altered the jury's verdict. *Id.* The party contending the misconduct must make an adequate showing to overcome the presumption of jury impartiality. *Gatewood v. Sampson*, 812 So. 2d 212, 217 (Miss. 2002).

¶25. In today's case, the trial court was made aware of the perceived impropriety through Rutland's motion for a new trial. The State, in its response, conceded that a juror had looked up the definitions of the words abuse and neglect, but argued that this did not prejudice the jury's verdict. In its order denying Rutland's post-trial motions, the trial court found, among other things, that, while it was improper for the juror to bring extraneous information into the jury room, the impropriety did not prejudice the verdict.

¶26. Of significant import, Judge Johnson stated in his order:

> The court has carefully considered the motion, the presentations at the hearing, and the authorities submitted by each side. Cases must be decided by juries upon the evidence presented in court and without extraneous evidence, investigations or improper influences or information. However, it must surely be recognized that jurors do not deliberate and decide cases in a vacuum. Twelve citizens of various backgrounds, educations and life experiences consult with one another about the case and ultimately render their individual and collective verdict based upon the evidence received and the instructions on the law from the court.

The court finds that standard dictionary definitions for the words "neglect" and "abuse" are not the type of improper extraneous information that have been found to invalidate jury verdicts in our case law. There is nothing inherently prejudicial in the definitions or as applied to this case. The dictionary definition of the two words is clearly something within the collective intelligence and common knowledge of any jury.

There is a very strong legal presumption that jurors follow the law, as they are instructed by the court. To engage in speculation otherwise, without a sound basis, would be contrary to the foundations of our jury system.

¶27. The trial court's finding that Rutland was not prejudiced by the juror's use of the dictionary definition is in accord with our precedent. In *Collins v. State*, 701 So. 2d 791, 796 (Miss. 1997), this Court held that a defendant was denied a fair trial when the *trial court* had provided the jury with a *law dictionary*. In *Collins*, we found that, because the trial court had provided the external source, there was a presumption of prejudice. *Id.* We went further, however, to find that this presumption does not arise when the external source is someone other than the trial judge, stating that:

Because the extraneous influence was introduced into the jury's deliberations by the court and not by accident or some outside party, we hold that a presumption is raised that prejudice flows from the injection of such extraneous influence. The action of a trial judge in giving instructions to a jury or sending evidence to a jury for consideration is substantially and qualitatively distinct from the jury's improper use of law books discovered in the jury room or an extraneous influence injected by an outside party and requires a more stringent standard.

*Id.* (internal citations omitted).

¶28. In today's case, because the definitions were not provided by the trial court, there is no presumed prejudice. Rutland must demonstrate how the jury's verdict was prejudiced by the external influence.

12

¶29. In *Wilcher v. State*, 863 So. 2d 719, 773 (Miss. 2004), this Court held that it was not reversible error for a jury to have access to a standard dictionary. In *Wilcher*, the defendant asserted that he was denied a fair trial and based his claim on the unsworn statement of a juror who stated that the jury was given a dictionary during deliberations. *Id.* at 770. This Court distinguished the facts of *Wilcher* from *Collins*, finding that: (1) the dictionary was not provided by the trial court; (2) there is a difference between a standard dictionary and a law dictionary, the former being "less likely to improperly instruct a jury on the laws of the State of Mississippi"; and (3) because the only evidence of an external influence was the unsworn statement of a single juror, the record did not clearly establish that the jury was in fact given a dictionary or by whom the dictionary was given. *Id.* at 772.

¶30. Similar to *Wilcher*, in today's case, the dictionary definition was not given to the jury by the trial court. Further, there is no evidence in the record of what type of dictionary the juror used to obtain the definition. Rutland claims that the juror used a dictionary from home to look up the definition, which tends to support a conclusion that a standard dictionary was used. Also, Rutland's claim is not supported by affidavit. The only evidence in this case of the external influence is a juror's statement made after the trial to Rutland's boyfriend at a gas station. Rutland's boyfriend then told Rutland's friend about the juror's use of the definition. The friend, in turn, notified Rutland's attorney, who subsequently filed a motion for a new trial based on this unsworn statement that had passed through multiple sources.

¶31. The State did concede in its response to Rutland's motion that a juror had looked up the definitions of the subject words and had brought the definitions to the jury room. This concession, however, is not enough to establish prejudice. Without providing more than the

statement contained in her motion – most of which is inadmissible under Rule 606(b) – Rutland cannot demonstrate that she was prejudiced by the juror's use of the definitions. The only part of the juror's statement that is permissible under Rule 606(b) is the fact that he and another juror looked up the definitions of the words abuse and neglect.

¶32.    Moreover, Rutland presents no evidence of what type of dictionary was used or what the actual definitions were. We do not know if the definitions which were looked up are similar to our statutory definitions. Arguably, the definitions could be similar to our statutory definitions of abuse and neglect. Several courts in other jurisdictions have held that when extraneous definitions do not differ from jury instructions, or when there is no showing that extraneous material differs from the law, the jury's exposure to the material does not result in reversible error. *See State v. Melton*, 692 P.2d 45, 49 (N.M. Ct. App. 1984) (jurors' consideration of dictionary definitions which did not vary from the usual ordinary meaning of those words, or from the meaning contained in the trial court's instructions did not prejudice the defendant); *State v. Tinius*, 527 N.W.2d 414, 417 (Iowa Ct. App. 1994) (definition did not conflict with legal concepts and was compatible with common meaning of word); *Dawson v. Hummer*, 649 N.E.2d 653, 665 (Ind. Ct. App. 1995) (finding no reversible error because there was no way of determining which dictionary was used by the jury; thus, there was no way of determining whether the dictionary definition differed from the legal definition); *Stagecoach Transp., Inc. v. Shuttle, Inc.*, 741 N.E.2d 862, 869 (Mass. App. Ct. 2001) (finding no reversible error because "the material did not differ in great respect from the actual law").

14

¶33. Considering that much of the evidence Rutland presented to support her claim of juror misconduct is inadmissible under Rule 606(b), Rutland has failed to demonstrate how she was prejudiced by the juror's impropriety. Without showing more, Rutland cannot show prejudice. *Collins*, 701 So. 2d at 795. Accordingly, the trial court did not abuse its discretion in denying Rutland's motion for a new trial. *Gladney*, 625 So. 2d at 415 ("This Court's authority to reverse a trial court's ruling on a motion for new trial is limited to those instances when the trial court abuses that discretion.").

¶34. We thus find this issue to be without merit.

## CONCLUSION

¶35. Having adopted the reasoning of the Court of Appeals concerning two of the three issues raised on direct appeal, and having addressed what we deem to be the critical issue of alleged juror misconduct, we affirm the judgment of the Court of Appeals, which affirmed Loni Marie Rutland's Franklin County Circuit Court judgment of conviction and sentence for felony child abuse.

¶36. **COUNT II: CONVICTION OF FELONIOUS CHILD ABUSE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN (10) YEARS SUSPENDED AND TEN (10) YEARS TO SERVE, WITH CONDITIONS, AFFIRMED**.

**WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.; CHANDLER, J., JOINS THIS OPINION IN PART. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY DICKINSON, P.J., AND KITCHENS, J. KING, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

15

¶37. When the jury room is infiltrated by influences or information not authorized by the court, and such things in any way bear upon the issues being tried, however inconsequential the intrusion may seem, it is as if some foreign substance has found its way into delicate machinery, or, allegorically speaking, a pea has been placed under the mattress of a princess.

¶38. Under our system of justice, every person charged with a crime is entitled to a fair trial before an impartial jury of his or her peers. Miss. Const. art. 3, § 26; U.S. Const. amend. VI. During deliberations, the jury should consider *only* the evidence developed at trial. ***Collins v. State***, 701 So. 2d 791, 794 (Miss. 1997). "A jury's verdict must be based upon the evidence and not affected by extraneous influences." ***Fuselier v. State***, 468 So. 2d 45, 57 (Miss. 1985). This Court has held that, where an extraneous influence is introduced into the jury's deliberation by accident or from some outside source, the extraneous influence must be shown to be prejudicial before a new trial is warranted. ***Collins***, 701 So. 2d at 796.

¶39. Notwithstanding our requirement that some prejudicial effect of the unauthorized material be proven as a prerequisite to a new trial, we have promulgated a rule that, in almost every scenario imaginable, precludes the development of such proof. The principal objective that likely generated Mississippi Rule of Evidence 606(b) – to insulate and protect jurors from post-trial inquiries about their deliberations – is laudable. However, if the jurors themselves are not permitted to relate what did or did not influence their decisions, how is the prejudicial effect of an extraneous influence to be determined? The answer is that, in almost all such cases, a prejudicial effect may be impossible to identify or to quantify. Thus, in my judgment, there is a strong case to be made for presuming that such unauthorized influences in the jury room *always* are prejudicial, or for eliminating altogether the

16

requirement of proof of a prejudicial effect. The matter at hand provides a compelling example of why we should not require a litigant to prove the unprovable in order to seek relief when unauthorized matter has invaded a jury room. The parties have agreed that an extraneous influence did enter this jury room. There is no way to assess its impact. At the same time, we cannot reliably divine that it had *no* impact.

¶40. Certainly, extraneous information or material in a jury room is a knife that can cut either way, depending upon its nature, character, and, sometimes, its source. It is not difficult to imagine – or, in the case of more seasoned members of the trial bar, to recall – instances in which unauthorized intrusions into the jury room created considerable anguish for the prosecution. In the next such case, the party seeking relief may be the State. Neither the prosecution nor the defense should be saddled with the burden of proving prejudice as a prerequisite to a meaningful remedy. In the end, the thing that must be protected unfailingly is the efficacy of the process itself; the jury room must be sacrosanct, so that the litigants, the lawyers, and the public at large may have as much confidence as can be built into the system that juries reach their decisions on the basis of nothing other than the evidence and the law, both of which have come to the jurors with the knowledge and approval of the presiding judge.

¶41. In this case, the trial judge gave a preliminary instruction that informed the jurors that they "[were] not permitted to . . . make any independent investigation." Further, the trial court explained to the jury that "[a]fter both sides finally rest, [the court] will review the instructions of law with the attorneys and then they will be read to you."

17

¶42.   Following the first day of trial, one of the jurors did make an independent investigation by researching the meaning of the words *neglect* and *abuse* in what is described in the majority opinion as a standard dictionary.  The juror then recorded those definitions onto a sheet of paper and carried the paper into the jury room on the following day, without the knowledge or approval of the judge.  On the second day of trial, after receiving the jury instructions and deliberating for fifty minutes, the jurors sent out the following question: "Is negligence the same thing as abuse?"  The trial court, quite correctly, sent the jury a note with the following response: "You must rely on the Court's instructions on the law already given to you.  Please continue your deliberations."  The jury resumed its deliberations for approximately half an hour, then returned a guilty verdict.

¶43.   As evidenced by the jury's note to the trial judge asking whether negligence was the same thing as abuse, it is clear that the jurors were concerned about the meanings of those words.  Even though I would not require Rutland, or any other litigant in such circumstances, to prove prejudice, it is clear to me that a juror's improper introduction of dictionary definitions of the words *neglect* and *abuse* into the jury's deliberations substantially prejudiced Rutland.

¶44.   Rutland was indicted under Mississippi Code Section 97-5-39(2)(a), which provides, in part:

> Any person who shall intentionally (i) burn any child, (ii) torture any child or, (iii) except in self-defense or in order to prevent bodily harm to a third party, whip, strike, or otherwise *abuse* or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious abuse of a child . . . .

18

Miss. Code Ann. § 97-5-39(2)(a) (Rev. 2006) (emphasis added). She was not indicted under the portion of Mississippi Code Section 97-5-39, which provides that:

> Except as otherwise provided in this section, any parent, guardian or other person who willfully commits any act or omits the performance of any duty, which act or omission contributes to or tends to contribute to the *neglect* or delinquency of any child . . . shall be guilty of a misdemeanor . . . .

Miss. Code Ann. § 97-5-39(1)(a) (Rev. 2006) (emphasis added).

¶45. Further, while neglect and abuse may have similar meanings in the dictionary utilized by the juror, the *legal* distinctions found in Mississippi Code Section 97-5-39 are the difference between less than one year in prison and life in prison. The juror's non-legal, dictionary definitions of abuse and neglect, brought into jury deliberations from an outside source, were grossly out of place in a venue that our government of laws, especially the judicial branch, from the inception of our nation, has gone to extraordinary lengths to keep inviolably free of improper influences. It bears reiteration that the prosecution, the defense, and a very astute trial judge *all* agreed that these outside definitions should never have entered the jury room. That the definitions may have been more or less accurate, or even consistent with applicable law, is not the point. Obviously, the point is that they did not come from the solitary, authorized giver of the law in this case, the trial judge himself. This defilement of the process irreparably contaminated the verdict of the jury.

¶46. Rutland argued that the use of these definitions was prejudicial to her case because the jury could have relied on the definition of neglect, a misdemeanor, but still have convicted her of felony abuse if the jury had determined that neglect and abuse had the same meaning. Rutland was not charged with, nor was she indicted for, child neglect. The jury

19

was not instructed regarding the misdemeanor of child neglect. Clearly, one of the jurors unilaterally and wrongfully introduced the concept of neglect into the jury deliberations following private, independent, and unauthorized research. The juror's research dealt with a concept that was introduced into the trial by neither the court nor the parties. We cannot rule out that the jury, which had sought but failed to receive definitions of these terms from the court, determined on the basis of information provided by one of their number that neglect was tantamount to abuse, and that if they believed there had been neglect they could appropriately find the defendant guilty of abuse. However, there are at least two problems with that analysis. First, Rutland was not charged with neglect. Second, the definitions of both neglect and abuse were obtained from an extraneous, clandestine source and not from the court. The only way to repair the morass of mischief caused by this juror's disregard of the court's clear instructions not to engage in independent investigation of the case is to afford Rutland a new trial, free of extraneous influences.

¶47.    I would reverse this case and remand it to the trial court for a new trial.

   **DICKINSON, P.J., JOINS THIS OPINION.  CHANDLER, J., JOINS THIS OPINION IN PART.**

   **CHANDLER, JUSTICE, DISSENTING:**

¶48.    I respectfully dissent, and I concur in part with the dissent of Justice Kitchens. While I am unwilling to go as far as Justice Kitchens, who would hold that every extraneous influence in the jury room, no matter how insignificant, requires a new trial, I would find that the extraneous information in this case prejudiced Rutland. The parties and the trial court were forbidden by Mississippi Rule of Evidence 606(b) from delving into the effect that the

20

extraneous information had upon the jury's verdict. But notwithstanding the lack of subjective evidence of prejudice, I believe a reasonable person would find it prejudicial for a juror to bring dictionary definitions of abuse and neglect into the jury room in a child-abuse case. Therefore, I would reverse and remand for a new trial.

**DICKINSON, P.J., AND KITCHENS, J., JOIN THIS OPINION IN PART**.