# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00157-COA

**GEOR'BARRI WELLS**                                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2021 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY B. FARMER |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/02/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Geor'Barri Wells appeals his conviction for second-degree murder and aggravated assault. Wells argues that the Washington County Circuit Court erred by limiting cross-examination during his trial and by excluding evidence that would have developed his theory of defense. Wells also argues that the circuit court abused its discretion in denying his motion for a new trial.

¶2. After our review, we find no error. We accordingly affirm the circuit court's judgment.

**FACTS**

¶3. In May 2018, Wells attended a birthday celebration at a hotel in Greenville, Mississippi. Wells testified that while he was outside the hotel, he was attacked by two men who tried to crash the party: Shaquille Townson and Aaron Townson. Wells shot Shaquille, claiming self-defense. Delnica Mason suffered a gunshot wound in the arm when she tried to break up the fight.

¶4. A Washington County grand jury indicted Wells with the following charges: one count of first-degree murder of Shaquille Townson, one count of attempted murder of Aaron Townson, one count of aggravated assault of Delnica Mason, and a firearm enhancement under Mississippi Code Annotated section 97-37-37 (Rev. 2014).

¶5. After a trial, the jury found Wells guilty of the lesser offense of second-degree murder of Shaquille and aggravated assault of Mason. The jury acquitted Wells of attempted murder and of the firearm enhancement.

¶6. The circuit court sentenced Wells to serve a total of twenty-five years in the custody of the Mississippi Department of Corrections: thirty years for the second-degree murder conviction, with five years suspended, and twenty years for the aggravated-assault conviction. The circuit court ordered that the aggravated-assault sentence would run concurrently with the sentence for second-degree murder.

¶7. Wells filed a motion for judgment notwithstanding the verdict or, alternatively, a new trial, which the circuit court denied. This appeal followed.

**DISCUSSION**

I. **Cross-examination**

¶8.     Wells first argues that his constitutional rights to fully cross-examine witnesses and to present his theory of defense were violated when the circuit court limited Wells's questioning of two witnesses.  Specifically, Wells argues that he should have been allowed to cross-examine Eric Carter and Donald Morris about whether they had seen Jamarcus Montgomery with a gun on the night of the shooting.  Wells asserts that he had a right to present his theories of defense to the jury, and he therefore maintains the circuit court's limitation of his cross-examination of these witnesses violated his right to a fair trial.  Wells submits that testimony showing that the two witnesses had discussed whether someone else had a gun that night would have supported his theory of self-defense.

¶9.     We recognize that "[t]he right to cross-examination is secured by the confrontation clause of the Sixth Amendment to the Constitution of the United States, made enforceable against the states by the Fourteenth Amendment."  *Farmer v. State*, 301 So. 3d 731, 734 (¶12) (Miss. Ct. App. 2020).  "Article 3, Section 26 of the Mississippi Constitution independently establishes this right, 'and has been considered to be co-extensive with the limits of relevancy.'"  *Id*.; *see* MRE 611(b).  Although "defense counsel has wide latitude in cross-examination, 'the trial court in its discretion has the inherent power to limit cross-examination to relevant matters.'"  *Id*. (quoting *Mixon v. State*, 794 So. 2d 1007, 1013 (¶20) (Miss. 2001)).  We review a circuit court's relevancy ruling limiting cross-examination for an abuse of discretion.  *Id*.

¶10.    Carter and Morris were at the party on the night of the shooting, and both Carter and Morris testified at trial regarding the events surrounding the shooting.  Wells asserts that the

3

circuit court erred when it "determined that Carter would not be allowed to testify to seeing anybody else with a gun." The record reflects that during cross-examination of Carter, the State objected to defense counsel questioning Carter about Montgomery having a gun on the night of the shooting. The State argued that eliciting such testimony would be a discovery violation because the defense counsel failed to turn over any evidence of another person in possession of a gun that night. The circuit judge ruled that he would give the defense "some leeway" by allowing defense counsel to "ask [Carter] whether he'd seen a gun." Defense counsel proceeded to ask Carter if he saw Wells with a gun on the night of the shooting. Carter answered, "No, ma'am." Defense counsel then asked, "Did you see anyone with a gun that night?" Carter again answered, "No, ma'am." We therefore find no merit to Wells's claim that the circuit court limited his cross-examination of Carter.

¶11. As for Morris's testimony, defense counsel admitted that she did not inform the State that Morris saw Montgomery with a gun that night. As a result, the circuit court initially ruled that Morris would not be allowed to testify about statements made to law enforcement regarding seeing Montgomery with a gun because defense counsel had not disclosed the intent to use those statements in discovery.

¶12. During Morris's testimony, Wells made a proffer that Morris would testify that he did not see Wells with a gun on the night of the shooting but that he did see Montgomery with a gun. Morris testified that during the party, he commented to another person that he saw Montgomery with a gun. The circuit court then gave the State an opportunity to question Morris outside the presence of the jury. The State asked Morris if he had told anyone prior

4

to the trial that he had seen Montgomery with a gun, and Morris responded that he could not recall. The State refreshed Morris's recollection with his statement to police. The State showed Morris that in his statement to police, Morris did not say that he definitely saw a gun; rather, he told police that he asked another man *if* Montgomery had a gun.

¶13. The State then argued that Morris's testimony regarding whether Montgomery had a gun at the time of the shooting was not relevant because the evidence and testimony presented at trial showed that Montgomery was inside the hotel room during the shooting, and not outside the hotel with Wells. The State asserted that, as a result, any evidence of Montgomery's alleged gun was not relevant to Wells's defense. When questioned by the circuit judge, defense counsel conceded that she could not make any connection between Montgomery's gun and the shooting.

¶14. The circuit court accordingly ruled that Morris's testimony regarding Montgomery's gun was not relevant under Mississippi Rule of Evidence 401.[1] The circuit court also excluded the testimony under Mississippi Rule of Evidence 403, inversely stating "the prejudice is not substantially [out]weighed by any probative value that it might have."[2]

¶15. On appeal, Wells argues that Morris's testimony was relevant because it supported

---

[1] Mississippi Rule of Evidence 401 provides the following test for determining if evidence is relevant: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the case."

[2] Mississippi Rule of Evidence 403 provides that a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Wells's defense that he was afraid for his life and shot Shaquille in self-defense. We acknowledge that Wells is "entitled to assert alternative theories, even inconsistent alternative theories." *Farmer*, 301 So. 3d at 734 (¶13). Indeed, "[a] criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Id*. However, Wells's "right to present his defense is limited by considerations of relevance and prejudice." *Id*. at (¶14). "Evidence is relevant when it has any tendency to make the existence of any fact that is of consequence more probable or less probable." *Id*. (citing MRE 401).

¶16. Although Wells is "entitled to assert alternative theories, even inconsistent alternative theories," the record shows that at trial, Wells did not assert any alterative theories regarding the presence of another gun. As the State points out in its appellate brief, Wells did not testify that he saw anyone else with a gun that night or that he heard gunshots prior to firing his gun. Rather, Wells testified that Shaquille and Aaron were beating him up, and he heard Shaquille say, "Might as well kill him." Wells testified that he knew Shaquille and Aaron were not going to stop beating him up, so he pointed his gun at Shaquille because "[Shaquille] was the one . . . steady beating [him] and . . . saying 'might as well kill [him],'" and Wells fired his gun.

¶17. After our review, we find that the circuit court did not abuse its discretion in excluding Morris's testimony about Montgomery's gun. The circuit court excluded the testimony after finding that it was irrelevant and, for all practical purposes, any assumed probative value of

the testimony would be substantially outweighed by any unfairly prejudicial effect. The evidence presented at trial showed that Montgomery was not outside at the time of the shooting. Additionally, defense counsel admitted to the circuit court that she could not tie Montgomery's gun to Wells's shooting of Shaquille. Accordingly, we find that the circuit court's ruling ultimately did not violate Wells's right to present a full defense or deprive him of a fair trial.

## II.    Motion for a New Trial

¶18.    Wells also argues that the circuit court abused its discretion by failing to grant his motion for a new trial. Wells argues that in his motion, he presented evidence showing one juror was confused throughout the trial and during deliberations and that this juror was possibly also hard of hearing. Wells submits that according to Mississippi Rule of Criminal Procedure 24.5, the circuit court should have sent the jury back for further deliberations or declared a mistrial when it was not clear that the verdict was unanimous.

¶19.    We review a circuit court's denial of a motion for new trial for an abuse of discretion. *Rutland v. State*, 60 So. 3d 137, 142 (¶18) (Miss. 2011). Mississippi Rule of Criminal Procedure 25.1 provides that a circuit court may grant a new trial "if required in the interests of justice . . . [and] if . . . the defendant has not received a fair and impartial trial."

¶20.    Wells's defense counsel attached an affidavit from Juror 6 to the motion for a new trial. In the affidavit, Juror 6 set forth issues that she noticed with Juror 41 during the trial. Specifically, she stated that Juror 41 had a hearing impairment and other jurors had to speak slowly and directly to her for her to understand. Juror 6 also stated that Juror 41 had a hard

time understanding what the other jurors were saying during deliberations and that she would get confused. Juror 6 stated that she was concerned about Juror 41's selection as a juror "because it was obvious to myself and other jurors that she was having difficulty hearing. There was no way she could hear all or most of the witnesses' testimony. She sat next to me in the jury room and would talk to me. She would ask me what I said several times, as she did with other jurors." Juror 6 further stated that "other members of the jury were aware and concerned about the mental condition of [Juror 41] as well," explaining that "[o]nce we returned to the jury room she would be rambling verbally; some of which I could not understand, as she sat next to me." Juror 6 opined that Juror 41 "also seemed confused throughout the entire trial, including when the [j]udge polled the jury."

¶21. On appeal, the State argues that to the extent Wells claims that the circuit court should have granted his motion for a new trial based on Juror 6's affidavit, Wells has failed to meet his burden. We agree. Rule 24.6(c) of the Mississippi Rules of Criminal Procedure provides that "[a]fter the verdict has been received by the court and entered on the record, the testimony or affidavits of the jurors shall not be received to impeach the verdict, except as permitted by the Mississippi Rules of Evidence." MRCrP 24.6. Mississippi Rule of Evidence 606 states that a juror "may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit . . . on these matters." MRE 606(b)(1). The rule provides two exceptions: a juror may testify about whether "extraneous prejudicial information was

improperly brought to the jury's attention; or an outside influence was improperly brought to bear on any juror." MRE 606(b)(2). Neither exception applies in the case before us.

¶22. Upon our review, we find that Juror 6's affidavit is improper under Mississippi Rule of Criminal Procedure 24.6 and Mississippi Rule of Evidence 606(b), and therefore the circuit court could not consider the affidavit. As a result, when determining whether to grant Wells a new trial on this issue, the circuit court was left only with Juror 41's responses during jury polling.

¶23. The transcript reflects that after the jury returned their verdicts, the circuit court polled each juror to determine whether the verdicts were unanimous. Wells submits that the transcript shows that Juror 41 was unable to give a clear answer for any of the four verdicts. When polling the jury on the second-degree murder conviction, the circuit court asked each juror whether their individual verdict was guilty. When questioning Juror 41, the following exchange took place:

> THE COURT: [Juror 41], is this your verdict?
>
> JUROR 41: Guilty.
>
> THE COURT: [Juror 41], the Count 1 for guilty of second-degree murder, is that your verdict?
>
> CLERK: Juror Number 41 [. . .] ?
>
> JUROR 41: Huh?
>
> THE COURT: Is your verdict that you found the defendant guilty of second-degree murder of the death of Shaquille Townson?
>
> JUROR 41: I said - - yeah, he found guilty.

9

THE COURT:        Is that your verdict?

JUROR 41:        Yes.

¶24.    The circuit court then polled the jurors to determine whether they had all voted not guilty on the attempted murder charge. When the circuit court polled Juror 41, the following exchange occurred:

THE COURT:        [Juror 41], is this your verdict?

JUROR 41:        Guilty.

THE COURT:        All right. [Juror 41], on Count 2, on attempted murder, did you vote that you found the defendant not guilty of attempted murder?  [Juror 41]?

JUROR 41:        Huh?

THE COURT:        You are [Juror 41]?

JUROR 41:        Uh-huh, yeah, that's me.

THE COURT:        All right, [Juror 41], listen to me.

JUROR 41:        All right.

THE COURT:        Did you vote not guilty - -

JUROR 41:        Yeah, he guilty.

THE COURT:        - - on Count 2?  Ma'am, you've got to listen to me.  Did you vote not guilty as to Count 2, attempted murder of Aaron Townson?  Not guilty?

JUROR 41:        I guess - - that's what I'm saying, not guilty.

THE COURT:        All right. "Not guilty."  All right.  Thank you.

¶25.    For the aggravated assault conviction, the circuit court again polled the jury to

determine whether each juror had voted guilty:

> THE COURT: [Juror 41], is this your verdict?
>
> JUROR 41: Guilty.
>
> THE COURT: All right. As to Count 3, did you find the defendant guilty of aggravated assault of Delnica Mason, in Count 3? Did you - - [Juror 41], did you vote to find the defendant guilty of aggravated assault of Delnica Mason in Count 3, yes or no?
>
> JUROR 41: Me?
>
> THE COURT: Yes, ma'am
>
> JUROR 41: Say that again, sir.
>
> THE COURT: All right. Did you vote yes or no - - that's what I'm asking, tell me yes or no. Did you vote to find the defendant guilty of aggravated assault of Delnica Mason in Count 3?
>
> JUROR 41: That's guilty.
>
> THE COURT: Okay.

¶26. Finally, as to the not guilty verdict on the firearm enhancement, the circuit court and Juror 41 had this last exchange:

> THE COURT: [Juror 41], is this your verdict?
>
> JUROR 41: Guilty.
>
> THE COURT: [Juror 41], as to Count 4, we're talking about the firearm enhancement. Did you vote: "We the jury find the defendant not guilty of firearm enhancement."? Did you vote not guilty on that?
>
> JUROR 41: Not - - not guilty.

THE COURT: Not guilty? All right.

¶27. Mississippi Rule of Criminal Procedure 24.5 provides that "[a]fter a verdict is returned, but before the jury is discharged, the court shall on a party's request, or may on its own, poll the jurors individually." The rule continues to state that "[i]f the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury." *Id*. We recognize that the circuit court "is in the best position to determine if a mistrial should be granted." *Avant v. State*, 910 So. 2d 695, 699 (¶14) (Miss. Ct. App. 2005); *see also Webb v. State*, 877 So. 2d 399, 405 (¶27) (Miss. Ct. App. 2003) ("[T]he [circuit] judge is afforded great deference and he is in the best position to observe the attorneys as well as all the jurors.").

¶28. Turning to the record before us, we find that although Juror 41 appeared to have trouble following the circuit court's polling, her response to the circuit court's questions supported the jury's verdict and confirmed that the verdicts were unanimous. We further find that Wells has failed to demonstrate that he suffered any prejudice by Juror 41's responses to the polling. *See Rutland*, 60 So. 3d at 143 (¶23) ("In addition to improperly basing much of [his] argument on the juror's statement, [the appellant] also fails to demonstrate how [he] was prejudiced by the juror's impropriety.").

¶29. After our review, we find that the circuit court did not abuse its discretion in denying Wells's motion for a new trial.

¶30. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J.,**

**CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**