## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2014-KA-01741-COA

**ZACHARY COZART A/K/A ZACHERY**                    **APPELLANT**
**COZART A/K/A  ZACK COZAR**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/2014 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RALPH STEWART GUERNSEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED AND TEN YEARS OF POST-RELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED – 05/03/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Zachary Cozart was tried before a DeSoto County jury for the capital murder of a twenty-one-month-old child.  The jury, pursuant to a flawed jury instruction offered by Cozart, found him guilty of manslaughter, and the Desoto County Circuit Court sentenced him to thirty years in the custody of the Mississippi Department of Corrections (MDOC), with fifteen years suspended and ten years of post-release supervision.  Feeling aggrieved,

Cozart appeals and argues that (1) he was erroneously sentenced pursuant to Mississippi Code Annotated section 97-3-25(2)(b) (Rev. 2014), which provides a maximum sentence of thirty years for the homicide of a child under the age of eighteen years by a person over the age of twenty-one years, rather than pursuant to Mississippi Code Annotated section 97-3-25(1) (Rev. 2014), which provides a twenty-year sentence for manslaughter;[1] (2) the verdict is against the sufficiency and overwhelming weight of the evidence; and (3) he received ineffective assistance of counsel.

¶2.     Finding no error, we affirm.

## FACTS

¶3.     On July 1, 2010, Ethan Conner, the minor child of Maria Christina Sierra, Cozart's then girlfriend, died as a result of what authorities suspected was child abuse that had occurred on June 25, 2010.  On January 13, 2011, Cozart was charged by indictment with capital murder under Mississippi Code Annotated section 97-3-19(2)(f) (Rev. 2014).[2]  The

---

[1] When Cozart committed the offense, section 97-3-25 did not have any subsections and read as follows:

> Any person convicted of manslaughter shall be fined in a sum not less than five hundred dollars, or imprisoned in the county jail not more than one  year, or both, or in the penitentiary not less than two years, nor more than twenty years.

Miss. Code Ann.  § 97-3-25 (Rev. 2006).

[2]  Section 97-3-19(2)(f) reads:

> The *killing of a human being* without the authority of law by any means or *in any matter shall be capital murder* . . . [w]hen done without any design to effect death *by any person engaged in the commission of the crime of felonious abuse and /or battery of a child* in violation of subsection (2) of [s]ection 97-5-

indictment alleged that Conner's death resulted from felonious child abuse by Cozart as defined in Mississippi Code Annotated section 97-5-39(2) (Rev. 2006).[3]

¶4. Cozart engaged in plea negotiations with the State that resulted in an agreed order[4] reducing Cozart's charge from capital murder to manslaughter under Mississippi Code Annotated section 97-3-35 (Rev. 2014), which provides that "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." The agreed order and Cozart's petition to enter an *Alford*[5] plea of guilty to manslaughter were filed July 10, 2013. On the same date, the circuit court accepted Cozart's plea of guilty and continued the matter for sentencing on September 12, 2013. However, the sentencing did not occur as originally scheduled, as the matter was continued multiple times

---

39, or in any attempt to commit such felony[.]

(Emphasis added).

[3] When Cozart was indicted, section 97-5-39(2)(a) read, in pertinent part:

*Any person* who shall intentionally (i) burn any child, (ii) torture any child or, (iii) *except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse* or mutilate *any child* in such a manner as *to cause serious bodily harm*, *shall be guilty of felonious abuse of a child* and, upon conviction, shall be sentenced to imprisonment in the custody of the Department of Corrections for *life or such lesser term of imprisonment as the court may determine*, but not less than ten (10) years.

Miss. Code Ann. § 97-5-39(2) (Rev. 2006).

[4] The order stated that it was entered upon the joint motion of Cozart and the district attorney, although a copy of the motion is not in the record.

[5] *North Carolina v. Alford*, 400 U.S. 25 (1970).

at Cozart's behest. In the meantime, on March 25, 2014, Cozart filed a motion to withdraw his guilty plea. On May 26, 2014, Cozart and the State presented to the circuit court an agreed order setting aside Cozart's plea of guilty, which the circuit court executed. However, the circuit court, for reasons not specified in the record, did not enter an order setting aside the previously entered order that reduced the charges from capital murder to manslaughter.

¶5. Cozart's capital-murder trial commenced on October 27, 2014. During the jury-instruction conference, Cozart's trial counsel offered an instruction for manslaughter as a lesser-included offense. The instruction, which we later discuss in greater detail, contained the elements for child homicide as defined in section 97-3-25(2)(a)(i)-(ii). After the close of the evidence and deliberations, the jury found Cozart guilty of manslaughter. Cozart filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial, which the circuit court denied. Following the denial of Cozart's post-trial motion, the circuit court sentenced him, under section 97-3-25(2)(b), to thirty years in the custody of the MDOC, with fifteen years suspended and ten years of post-release supervision. This appeal followed.

## DISCUSSION

### I. Ex Post Facto Statute

¶6. Cozart argues that the lesser-included-offense jury instruction offered by his trial counsel, which echoed the elements found in section 97-3-25(2), altered his indictment and subjected him to a harsher penalty. The subject jury instruction reads, in pertinent part:

> If you find from the evidence in this case, beyond a reasonable doubt to the exclusion of every other reasonable hypothesis other than that of guilt:

4

On or about June 25, 2010, [Cozart] did unlawfully[] and negligently by a reckless manner kill Ethan Conner, without malice, [that the act] was intentional and not accidental and [Cozart] was over the age of twenty-one (21) years and the victim was a child under the age of eighteen (18) years, then you shall find . . . Cozart[] guilty of manslaughter.

While maintaining that he could only be tried for manslaughter because the agreed order had reduced the charge from capital murder to manslaughter, Cozart, citing *Flowers v. State,* 35 So. 3d 516 (Miss. 2010), also contends that both his due-process rights and the Ex Post Facto Clause were violated because section 97-3-25(2) did not become effective until July 1, 2013.[6]

---

[6] When Cozart was indicted, section 97-3-25 read as follows:

Any person convicted of manslaughter shall be fined in a sum not less than five hundred dollars, or imprisoned in the county jail not more than one year, or both, or in the penitentiary not less than two years, nor more than twenty years.

Miss. Code Ann. § 97-3-25 (Rev. 2006). Section 97-3-25 was amended in 2013, and now reads as follows:

(1) Except as otherwise provided in this section, any person convicted of manslaughter shall be fined in a sum not less than Five Hundred Dollars ($500.00), or imprisoned in the county jail not more than one (1) year, or both, or in the custody of the Department of Corrections not less than two (2) years, nor more than twenty (20) years.

(2)(a) A person is guilty of child homicide if:

(i) The person is found guilty of manslaughter in circumstances where the killing, although without malice, was intentional and not accidental; and

(ii) The perpetrator was over the age of twenty-one (21) years and the victim was a child under the age of eighteen (18) years.

(b) A person found guilty of child homicide shall be imprisoned in the custody of the Department of Corrections for a term not to exceed thirty (30) years.

5

He asserts that the application of the child-homicide statute in this case essentially amended his indictment by requiring proof of child abuse, adding elements to the offense that he was charged with, and eliminating the heat-of-passion element of manslaughter. Cozart also asserts that his failure to raise, at trial, the deficiency of the indictment under which he was convicted does not waive this issue on appeal.

¶7. In response, the State argues that the order reducing the charge from capital murder to manslaughter was a part of a procedural process to implement the plea deal, which was not completed because Cozart reneged. The State also argues that to give credence to the notion that the State must remain bound by any action that it had taken in implementing a plea deal after the defendant has reneged on his part of the deal would allow a defendant to start the process for a plea deal, wait for the charges to be reduced, and then withdraw from the process. The State further argues that Cozart has waived his right to assert an ex post facto violation. We agree with the State's argument.

¶8. As to Cozart's argument that the State was bound to try him on the reduced charge, we acknowledge that there is no language in the plea agreement tethering the decision to reduce the capital-murder charge to Cozart's agreement to plead guilty to the lesser manslaughter charge. However, it is clear to us that the two were connected and interrelated. First, the order reducing the capital-murder charge to manslaughter was an agreed order. If the State wanted to reduce the charges without the benefit of a ea deal, it could have done so on its own without an agreement from Cozart. Second, the agreed order and the plea

---

Miss. Code Ann. § 97-3-25 (Rev. 2014).

agreement were filed on the same day. Third, at the conclusion of the State's case, as a part of the State's rebuttal to Cozart's motion for a directed verdict, the State mentioned that the case was a capital-murder case. Cozart and his counsel remained mute. Had they been operating under the perception that Cozart was on trial for manslaughter rather than for capital murder, surely they would have said something then. Fourth, the jury instructions made it clear that the charge that the jury was to consider was capital murder, and Cozart did not raise an issue in his post-trial motion regarding the charge that he had been found guilty of. Even the manslaughter instruction offered by Cozart referenced the charge of capital murder as the charge for which he was being tried. Although Cozart takes the position that his capital-murder charge was dismissed because the order reducing his charges was not rescinded when his guilty plea was withdrawn, it is clear that Cozart's charge was only reduced to manslaughter pursuant to his plea agreement, and once the guilty plea was withdrawn, his charge of capital murder was reinstated, even if the circuit court neglected to enter an order rescinding the order that had reduced the charge from capital murder to manslaughter. As such, we find no merit to Cozart's contention that he should have been tried on a manslaughter charge instead of a capital-murder charge.

¶9. As to Cozart's argument that he could not be sentenced for child homicide because the crime of child homicide did not exist when Conner was killed, we agree with the State that he has waived this argument. As mentioned, the manslaughter jury instruction that Cozart's trial counsel offered contained the elements of child homicide and instructed the jury to find Cozart guilty of manslaughter if it found those elements. He did not offer a jury

7

instruction on heat-of-passion manslaughter. Cozart argues that his case is similar to *Flowers* and that his argument is not barred on appeal. We disagree. In *Flowers*, the Mississippi Supreme Court reversed Flowers's conviction because he was indicted for a crime that did not exist at the time the alleged offense occurred. The statute that was in effect at the time that Flowers committed the offense was later amended to include the offense that Flowers had committed and which was the subject of his indictment. *Flowers,* 35 So. 3d at 519 (¶¶7-8). Stated differently, the supreme court found that Flowers's indictment was defective because the crime stated in the indictment was nonexistent.[7] *Id.* at 518-19 (¶6). That is not the case here. Cozart's indictment is not fatally defective; he was charged with capital murder as a result of felonious child abuse, which was a crime at the time of the commission of the offense and at the time of his indictment.[8]

¶10. We find that our case is analogous to *Barnett v. State,* 725 So. 2d 797, 801-02 (¶24) (Miss. 1998). In *Barnett*, Barnett was indicted for capital murder, and the available sentences

[7] The supreme court stated that, despite the fact that the ex post facto issue was not raised at trial, "Flowers's due-process rights were disregarded and the Ex Post Facto Clause was violated when he was convicted and sentenced for the crime of statutory rape, as his alleged misconduct did not fall under the definition of statutory rape in effect at the time of the offense . . . ." *Flowers,* 35 So. 3d at 518 (¶6). The supreme court reversed Flowers's conviction, holding that "the indictment failed to charge a crime under the statutory[-]rape statute in effect at the time of the offense[, thereby making it] fatally defective." *Id.* at 519 (¶¶6, 8).

[8] Cozart's indictment reads, in pertinent part:

Cozart willfully, unlawfully, and feloniously, and without authority of law, killed and murder[ed] Ethan Conner, a human being under the age of eighteen (18) years old, while . . . Cozart [was] engaged in the commission of the crime of felonious abuse and/or battery of said child with or without any design to effect the death of Ethan Conner[.]

were death or life in prison. *Id.* at 801 (¶21). Following Barnett's indictment but prior to his conviction and sentencing, the applicable statute was amended, making life in prison without parole an additional sentencing option. *Id.* Although the statute providing the additional sentencing option was not in effect when Barnett was indicted, the jury sentenced him to life in prison without parole. *Id.* Barnett did not object to the sentencing at trial but argued on appeal that his sentence was void because of the ex post facto application of the sentencing statute. *Id.* The supreme court found that Barnett had waived his ex post facto-sentencing claim because he failed to raise the issue at trial. *Id.* at (¶24). The court stated, "The appropriate time for Barnett to have objected to the life[-]without[-]parole sentencing option was at the point that the jury was given its instruction, at the latest. It is axiomatic that a litigant is required to make a timely objection." *Id.* at (¶22).

¶11.    Here, as stated, Cozart was aware that the manslaughter jury instruction introducing the elements of child homicide would be given to the jury because he offered the instruction himself, which implicates a point made by the *Barnett* court: "[I]t is also clear that [Barnett] relied upon the option he now complains of[.]" *Id.* at (¶24). Like the defendant in *Barnett*, Cozart not only relied upon the instruction that created the error, he offered the instruction. Therefore, Cozart, like the defendant in *Barnett*, has waived his right to assert an ex post facto violation. Consequently, this issue is without merit.

## II.    *Weight and Legal Sufficiency of the Evidence*

¶12.    Cozart argues that the weight and the legal sufficiency of the evidence were overwhelmingly against the jury's verdict. It is well established that

in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for a directed verdict or for a judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.

*Bush v. State,* 895 So. 2d 836, 843 (¶16) (Miss. 2005) (internal citation and quotation marks omitted). In addition, the supreme court has stated:

When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Id.* at 844 (¶18).

¶13. We briefly discuss the facts supporting the jury's verdict. At trial, Sierra testified that after waking up on June 25, 2010, she went to Conner's room and looked in on him as he slept, stating that she did not notice anything unusual and that he was breathing. Sierra then went to take a shower. A few minutes after she got into the shower, Cozart came in "yelling that [Conner] was not breathing." At that point, Sierra rushed out of the shower to find Conner on the hallway floor right outside of his bedroom. Sierra stated that she asked Cozart what happened and then called 911. Cozart informed her that "[Conner] fell out of the bed, and he found him on the floor of his bedroom next to his bed." During her testimony, Sierra admitted that she never saw Conner on the floor next to his bed. Once an ambulance arrived, Conner was taken to Baptist DeSoto Hospital in Southaven, Mississippi. Conner was later transported to Le Bonheur Children's Hospital in Memphis, Tennessee, where he remained until his death on July 1, 2010. Following Conner's death, the case was turned over to law

enforcement for investigation, leading to Cozart's indictment.

¶14. Cozart argues that the identity of the child abuser cannot be identified from the evidence presented. He contends that the State's theory of how the incident leading to Conner's death occurred is inconsistent with the testimony of the State's experts. Cozart also argues that the expert witnesses created a much broader timeline of when the injuries could have occurred. Cozart contends that the only logical inference that was established by the record is that Conner was abused on Wednesday or Thursday before the Friday that he was discovered by Cozart. In addition, he further argues that in closing argument, the State gave a description of how the abuse occurred that is not supported by the evidence. For the reasons that we will explain, we disagree.

¶15. The record reveals that the State proceeded on the theory that while Sierra was in the shower, Conner had gone to her room looking for her and was beaten by Cozart, who later moved him to the hallway. The only people who were in the home with Conner on the day of his injury were Sierra and Cozart. Cozart did not testify. As mentioned above, Sierra gave testimony describing the incident and the actions that occurred. During her testimony, she admitted that she had never seen Cozart "lay his hands on [Conner]" in a disciplinary manner or strike him. She also testified that Conner had fallen and hit his head on other occasions, including one time in March 2010, when he fell while he was taking a shower with her at her aunt's home. However, Sierra did not testify to anything that could be interpreted as eliminating the possibility that Conner's death had been caused by abuse from Cozart.

¶16. In addition, there was expert-witness testimony from Doctor Karen Lakin, a medical

11

director at Le Bonheur, who examined Conner and reviewed his records. Dr. Lakin testified that Conner's injury, referred to by her as a subarachnoid hemorrhage, was "acute," meaning that it was "very recent." Dr. Lakin stated that Conner's death was not a case of second-impact syndrome, but rather, it appeared to be a case of "shaken baby syndrome," which is now referred to as "abusive head trauma." On cross- examination, Dr. Lakin stated that acute meant "within . . . between 48 and 72 hours at the very most." There was also expert testimony from Doctor James Caruso, the forensic pathologist who conducted an autopsy on Conner. Dr. Caruso testified that Conner's death was caused by "blunt force injuries of the head" and that his "manner of death [was] homicide." Dr. Caruso also described Conner's injury as "acute." He defined acute as "occurr[ing] likely within hours to days prior to the child losing consciousness." On cross-examination, Dr. Caruso again stated that the cause of Conner's death was "[b]lunt force injuries of the head."

¶17. This court addressed a similar fact scenario in *Rutland v. State,* 60 So. 3d 187 (Miss. Ct. App. 2010). In *Rutland*, Rutland was convicted of felonious child abuse without any direct evidence of child abuse. When deciding whether the evidence was sufficient to support the conviction, this Court stated:

> Since no direct evidence of child abuse was presented, the State based its case on circumstantial evidence from A.T.'s treating physicians and two social workers. The jury was instructed that a verdict based on circumstantial evidence "must be so strong as to exclude every other reasonable hypothesis other than that of guilt." Considering the evidence in the light most favorable to the State, we find the evidence presented was sufficient to show, to the exclusion of every other reasonable hypothesis, that Rutland's actions resulted in A.T.'s leg injuries. Both doctors testified that the possible scenarios given by Rutland for A.T.'s injuries were not plausible, and Rutland, who maintained that A.T. was constantly under her supervision, offered no other plausible

12

explanation for the injuries. We find that any rational juror could have found beyond a reasonable doubt that all of the elements of felonious child abuse were proven by the State.

*Id*. at 191 (¶16).  When deciding whether the weight of the evidence was sufficient, this Court stated:

> In situations where the State's case is based wholly upon circumstantial evidence, the State is required to prove the defendant guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.  The jury was properly instructed on circumstantial evidence, and we find that the jury's verdict is supported by the overwhelming weight of the evidence.  Therefore, we find that this issue is without merit.

*Id.* at 192 (¶20) (internal citation omitted).

¶18.    Here, as explained above, the conviction was based on circumstantial evidence.  The State produced testimony from Sierra, who did not dispute that Cozart had comitted the abuse.  Although both expert witnesses gave a broad timeline while defining "acute," both witnesses agreed that the injury was "very recent."  In addition, Dr. Lakin referred to Conner's injuries as abusive head trauma, dispelling that it could have been second-impact syndrome, which is what Cozart tried to prove was the cause of death.  Also, Dr. Caruso referred to Conner's death as a homicide.  As such, we find sufficient evidence to support the jury's verdict.  Therefore, this issue is without merit.

### III.    *Ineffective Assistance of Counsel*

¶19.    Cozart argues that his trial counsel was ineffective.  It is well established that "[i]n order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that his attorney's performance was deficient and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Dartez v. State,* 177 So. 3d 420, 423 (¶19) (Miss. 2015)

13

(internal citations omitted).  In addition, the supreme court has stated that

> [appellate courts] look at the totality of the circumstances to determine whether counsel's efforts were both deficient and prejudicial.  There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will we find that counsel's performance was deficient.

*Id.*

¶20.   Here, Cozart alleges that his trial court counsel's introduction of and failure to object to a jury instruction based on section 97-3-25 constitutes ineffective assistance of counsel. Cozart also alleges that his trial court counsel's failure to object to his being tried for capital murder constitutes "professional misfeasance."  Cozart further alleges that his trial counsel's initial trial strategy of proving that Conner's death was caused by second-impact syndrome was not used due to the retirement of his expert, causing him to default to a strategy that presented no reasonable hypothesis for Conner's death.

¶21.   In response, the State argues that the things that Cozart complains of constitute effective strategic decisions.  The State points to the fact that Cozart's trial counsel got the prosecutor to agree to reduce the charges as part of a plea deal, and was able to get a manslaughter jury instruction on a capital-murder charge without any direct evidence.  We agree with the State.  Although Cozart maintains that his trial counsel failed to maintain his theory of second-injury syndrome after Cozart's expert witness retired months before the trial, we note that Cozart's counsel conducted effective cross-examination.  It is clear that Cozart's trial counsel had clearly studied the case and effectively prepared for both pretrial and trial matters.  Cozart has failed to prove that his trial court counsel's performance was

14

deficient.  As such, this issue is without merit.

¶22.   **THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED AND TEN YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**